In the Matter of the Application of JOHN BOGACKI and Others, Petitioners, for an Order of Mandamus against C. CHASE ZOLEMSKI and Others, Constituting the Town Board of the Town of Cheektowaga, N. Y., and the Town Board of Said Town, Defendants, Respondents.

Supreme Court, Erie County, March 18, 1932.

*William S. Rann*, for the petitioners.

*Carlton A. Fisher*, for the defendants and respondents.

CHARLES B. WHEELER, Official Referee. This proceeding was instituted by the petitioner on behalf of himself and others similarly situated for an order of mandamus directing and commanding the defendants to meet as a town board and reconsider and rescind

or repeal certain resolutions adopted by them on the 1st day of January, 1932, in and by which said defendants, as the town board of the town of Cheektowaga, assumed to appoint certain constables for said town, to reduce others and to change the salaries to be paid others as will more fully appear by the record of said proceedings set forth in the petition in this case.

Later in this opinion attention will be called to certain of the specific actions taken, and which it is charged are in violation of the Town Law governing the situation.

The town of Cheektowaga adjoins the city of Buffalo, and prior to the general election of 1931 employed a corps of peace officers or constables, many of whom had occupied that position for a number of years, some of them having served as firemen and others of whom were honorably discharged soldiers and veterans. By the election in November, 1931, the political complexion of the town board was changed. The newly-elected members of the town board took office January 1, 1932, but the old board continued to act up to that date.

On November 16, 1931, the old board met and adopted the following resolution:

"Moved by Milne, seconded by Kaufman, that the following resolution be adopted:

" Whereas, a petition has been presented to this Board by more than twenty-five taxpayers of the Town of Cheektowaga, pursuant to the provisions of section 121-a of the Town Law, asking that a a sum of money, not exceeding one-tenth of one per centum of the assessed valuation of the taxable property of the said town, be raised annually for the purpose of defraying the expenses necessary for the preservation of the public peace of the said town; and

" Whereas, under the provisions of section 465 of the Town Law as last amended by Chapter 710 of the Laws of 1931, constables appointed by this Board as peace officers of the Town of Cheektowaga, pursuant to the provisions of section 121-a of the Town Law, may not be removed from the police force to which they shall have been appointed, except for incompetency or misconduct, shown after a hearing, upon due notice upon stated charges; and

" Whereas, it is desirable in the public interest that secure and continuous tenure of office during competency and good behavior, be given to police officers, now, therefore, be it

" Resolved, that the hereinafter named duly qualified persons who are now constables of the Town of Cheektowaga and who now constitute the police force of the said town, be, and they are hereby appointed as constables and police officers of the Town of

Cheektowaga, of the respective rank set opposite their respective names, pursuant to the provisions of section 121-a of the Town Law as modified and amended by section 465 of the Town Law, and pursuant to the provisions of section 465 of the Town Law to hold office during good behavior and competency, subject to removal for incompetency or misconduct, shown after a hearing upon due notice upon stated charges, only, and with the right to review by certiorari any action that may be taken for their removal or the removal of any of them, and that each of said officers shall continue to receive a salary at the rate set opposite the name of such respective officer, to wit:

| | |
|---|---|
| " Amedeo L. Cappola, Chief Constable | $183 33 per month. |
| " John F. Merzman, Constable | 166 66 per month. |
| " Arthur Barrett, Constable | 150 00 per month. |
| " John Bogacki, Constable | 150 00 per month. |
| " John E. Carr, Constable | 150 00 per month. |
| " Stephen Choinski, Constable | 150 00 per month. |
| " Andrew Hoerner, Constable | 150 00 per month. |
| " Joseph Huber, Constable | 150 00 per month. |
| " Christopher J. Klenk, Constable | 150 00 per month. |
| " Louis Kozlowski, Constable | 100 00 per month. |
| " Charles Lauer, Constable | 150 00 per month. |
| " Martin Molik, Constable | 150 00 per month. |
| " John Mueller, Constable | 100 00 per month. |
| " Peter Rohr, Constable | 150 00 per month. |
| " Frank Zalemski, Constable | 100 00 per month. |

" The foregoing motion having been put to a vote, five (5) members of the board voted ' aye ' and Justice Pawlak voted ' no.'

" The chairman then declared the motion and resolution duly adopted."

Prior to the official action of the board taken November 16, 1931, at a meeting of the town board held November 18, 1929, the following resolution was adopted:

" Moved by Inda, seconded by Milne, that the following resolution be adopted:

" Whereas, the term of office of Chief Constable, Lieutenant Constable and all Special Constables expired November 10th, 1929, being 5 days after the General Election held November 5th, 1929, now in pursuance of Section 465 of the Town Law, be it

" Resolved, that A. L. Cappola, be and he hereby is appointed Chief Constable of said town at the Annual salary of $2200 and that John F. Mersman be and he hereby is appointed Lieutenant Constable at an annual salary of $2000 and that Peter Rohr,

Marvin Davison, Christopher Klenk, Charles Lauer, Andrew Hoerner, John F. Carr, Louis Kozlowski, John Bogacki and Joseph Huber be and they are hereby appointed Special Constables; and be it further

" Resolved, that the term of office of Chief Constable, Lieutenant Constable and all Special Constables shall be at the pleasure of the Town Board; and be it further

" Resolved, that all the above appointments shall take effect at 6 o'clock P. M. November 16, 1929.

" Carried. Ayes, 7. Noes, 0."

However, on January 1, 1932, the new town board met and adopted the following resolutions:

" Whereas, the total asessed valuation of said Township is the sum of \$24,973,250, and

" Whereas, one-tenth of one per cent of said valuation is the sum of \$24,973.25, and

" Whereas, the total salaries of the chief constable and constables as set forth in the aforesaid resolution is the total sum of \$24,599.88, and

" Whereas, the expenditures for town police, police material and supplies, automobile, motorcycle maintenance and other expenses for the year 1930 amounted to \$1,935.97, making a total expenditure of \$26,535.85, and

" Whereas, if the police force is continued on the same basis for the year 1932, it is estimated that the total expenditure would be the sum of approximately \$26,535.85, which would be \$4,562.60 over and above the sum of \$24,973.25, which is one-tenth of one per cent of the annual assessment of the Town, and

" Whereas, section 465 of the Town Law provides that the Town Boards may provide for compensation per diem or by the week, month or otherwise in its discretion, but not exceeding at the rate of one hundred and fifty (\$150.00) dollars per month, for any constable or special constable, and not exceeding the rate of two hundred (\$200.00) dollars per month for such chief constable appointed, and

" Whereas, the aforesaid resolution appointing John F. Mersman exceeds the rate prescribed by law by sixteen dollars and sixty-six cents (\$16.66) and is therefore contrary to law, and

" Whereas, it is desirable in the public interests that the aforesaid laws be complied with and that expenses be kept at a minimum, now

" Therefore, be it resolved, that the aforesaid resolution of November 16th, 1931, purporting to appoint, name, designate and

fix the salary of the aforesaid Chief Constable, and constables, be and hereby is reconsidered and rescinded.

" The foregoing motion having been put to a vote, six members of the Board voted ' aye ' and Justice Milne voted ' no.'

" The chairman then declared the resolution and motion duly adopted.

" Moved by Judge Faber, seconded by Mr. Eberl, that the following resolution be adopted:

" Whereas, it is desirable that in the public interests a proper police protection be given to the Township under competent supervision and at minimum cost to the taxpayers, now, therefore, be it resolved:

" Judge Faber offered the following resolution for adoption, seconded by Judge Piatek:

" Resolved, that Amedeo L. Cappola, Chief Constable of the Town of Cheektowaga, be and he hereby is removed from his office and rank as chief constable and hereby is reduced to the rank of constable to serve at the pleasure of this Town Board to receive a salary hereinafter named.

" Judge Pawlak offered the following resolution for adoption, seconded by Judge Piatek:

" Resolved, that Charles Wohlford, Jr., be and he hereby is appointed Chief Constable and is to receive a monthly salary of one hundred and seventy-five ($175.00) dollars.

" Judge Pawlak offered the following resolution for adoption, seconded by Judge Faber:

" Resolved, that Peter Weber be, and he hereby is appointed constable at a yearly salary of eighteen hundred ($1800.00) dollars.

" Judge Piatek offered the following resolution for adoption, seconded by Mr. Eberl:

" Resolved, that Frank Zalemski be and he hereby is appointed constable at a yearly salary of eighteen hundred ($1800.00) dollars.

" Mr. Eberl offered the following resolution for adoption, seconded by Judge Faber:

" Resolved, that William Mendel be and he hereby is appointed constable at a monthly salary of sixty ($60.00) dollars.

" Judge Faber offered the following resolution for adoption, seconded by Mr. Eberl:

" Resolved, that Walter Przepiora be, and he hereby is appointed constable at a monthly salary of sixty ($60.00) dollars.

" Judge Piatek offered the following resolution for adoption, seconded by Judge Faber:

" Resolved, that Stanley Fenske be and he hereby is appointed constable at a monthly salary of sixty ($60.00) dollars.

" Judge Faber offered the following resolution for adoption, seconded by Judge Pawlak:

" Resolved, that the following named constables shall receive a salary at the rate set out and named for each respective officer, to wit:

| | |
|---|---|
| " John F. Mersman, constable.......................... | $60 00 |
| " John E. Carr, constable............................. | 60 00 |
| " Christopher J. Klenk, constable..................... | 60 00 |
| " Louis Kozlowski, constable.......................... | 60 00 |
| " Charles Lauer, constable............................ | 60 00 |
| " Andrew Hoerner, constable........................... | 60 00 |
| " John Mueller, constable............................. | 60 00 |
| " Arthur Barrett, constable........................... | 60 00 |
| " Stephen Choinski, constable......................... | 60 00 |
| " Peter Rohr, constable............................... | 60 00 |
| " Martin Molik, constable............................. | 60 00 |
| " Amedeo L. Cappola, constable........................ | 60 00 |
| " John Bogacki, constable, working at desk............ | 20 00 |
| " Marvin Davison, constable, working at desk.......... | 20 00 |
| " Joseph Huber, constable, working at desk............ | 20 00 |

" Carried — 6 ayes — 1 no."

If valid, these resolutions appointed new and further constables and police officers, reduced the rank of others, and at the same time changed and reduced the salaries or compensation of others long in the service, including that of the petitioners. It will be noted the resolutions adopted at the board meeting held on January 1, 1932, reduced the salaries of Chief Constable Coppola from $183.33 per month to $80 per month, that of John F. Mersman from $166.66 per month to $60; that of eight other peace officers from $150 per month each to $60 per month, and that of three others receiving $150 per month to $20 per month.

The official action of January 1, 1932, appointed a new chief constable at a salary of $175 per month, an assistant or deputy at $150 per month and three new or additional peace officers at a salary of $60 per month each.

The added cost to the town of these new appointees amounts to $503 per month or $6,060 per year. The petition alleges in substance this action of the town board was taken in bad faith, and in violation of the statute; that the compensation of the petitioners and others as undertaken to be fixed was with the design to force the petitioners and others to resign for the reason that it did not constitute a living wage, being only at the rate

of sixty-seven cents a day for the petitioner, and that such action violated particularly section 465 of the Town Law, as amended by chapter 710 of the Laws of 1931, going into effect April 24, 1931. This section, as amended, among other things provides, speaking of the town constable force: " The chief constable, whether elected or appointed, may be reduced to the rank of constable or special constable by the board at its pleasure, but the town board shall not remove any such chief constable, constable or special constable, nor any peace officer of whatever rank, appointed in any such town pursuant to section one hundred and twenty-one-a of this act, from the police force except for incompetency or misconduct shown after a hearing upon due notice upon stated charges, and with the right of review by certiorari. A copy of the charges and answers thereto together with the record of the proceedings and determination of the town board shall be filed in the office of the town clerk."

Perhaps the initial question presented is the proper interpretation of section 465 as it now stands amended. Did it in effect create a permanent police force for certain towns, and make its members subject to removal only for incompetency or misconduct upon charges and after a hearing, or was it only intended that such members should hold their positions for a stated term and subject to removal for cause during such term.

It will be noted that by the resolution of the town board passed November 16, 1929, set up in the petition, it is recited their term of office of constables then appointed expired November 5, 1929, but does not in express terms state the term for which the appointees are to hold office. It will also be noted that in the resolution of the town board passed November 16, 1931, the provisions of section 465, as amended, are referred to, and it is recited that " it is desirable in the public interest that secure and continuous tenure of office during competency and good behavior be given public officers," therefore, the officers named be appointed " to hold office during good behavior," etc.

The old town board, it will thus be seen, acted upon the assumption that by the act of 1931, section 465 created a permanent police force subject only to removal for cause.

Turning now to the official action of the town board taken January 1, 1932, it will be seen the appointments made by the old board on November eighteenth are not revoked only in special instances as to chief constable, but the salaries to be paid are changed as set forth in such resolutions, thus reducing the compensation of some constables to sixty dollars per month and others to twenty dollars per month. Neither the resolutions of the board adopted November eighteenth, nor those adopted January 1, 1932, assumed

to fix any length of term for the appointees, but evidently proceeded on the theory that section 465 created a permanent force subject only to removal for cause and after a hearing.

The referee is of the opinion this view of the statute is the correct one.

The Legislature evidently intended to make the police forces of towns permanent ones, such as exist in most, if not all, the cities of the State, and to place its members beyond removal for whim or for political reasons, and to give members the assurance of permanent tenure except for incompetency or misconduct, and thus insure the good of the service.

In this connection it should be noted that whether the petitioners hold office during good behavior or only for the term of two years the provisions of section 465 against arbitrary removal still govern. It only remains for the referee to determine whether the reduction of the salaries of such appointees to sums named in the resolutions of the board on January 1, 1932, was taken in bad faith and in effect would force the resignation of the appointees by reason of the inadequacy of the compensation fixed.

We believe no one can consider the undisputed facts without reaching the conclusion that the town board's action of January 1, 1932, was not taken in good faith, but with the ulterior motive of forcing certain of the men named to resign and retire from the service. Fixing the salaries of certain of the constables at sixty dollars and others at twenty dollars per month characterizes their action. We may take judicial notice such amounts are wholly inadequate. It is not a living wage. They had been receiving for their services $150 per month. Twenty dollars per month is less than one-seventh the amount previously paid. The argument is advanced in the resolutions of January first and by counsel that the action was in the interest of economy and to keep the expenses of the force down to the tenth of one per cent of the total assessments authorized by law to be raised by taxation for that purpose. It is undoubtedly true the financial condition of the town of Cheektowaga demands the exercise of economy in town affairs. It, however, does seem inconsistent that at the same time it reduced salaries of police constables to the sums stated the board should increase the cost of the force by adding five new men at annual salaries aggregating $6,060.

The new members of the force were appointed at salaries of sixty dollars per month while the salaries of old and experienced men were reduced to sixty dollars and twenty dollars per month. Such facts demonstrate the fallacy of the contention made on behalf of the defendants. In this connection it should be noted that while

the board is authorized by law to raise by taxation not to exceed one-tenth of one per cent of the assessed valuation of the town, which is $24,973.25, nevertheless the town has other sources of revenue, which may be used for legitimate purposes; and the restriction relates only to the amount to be raised by " taxation," but does not forbid the use for police purposes of other available funds.

The referee is, therefore, forced to find that the action of the board complained of by the petitioners was not taken in good faith, but for ulterior motives, and does not provide proper and adequate compensation. If there was and is justification for the action taken none was offered on the hearing before the referee. Are the petitioners without legal remedy and redress?

While the board may by law fix and even reduce salaries of officers may it by subterfuge reduce them beyond a reasonable amount to accomplish a forced removal from office? We think this cannot be legally done, and that the courts will not permit the purposes of the statute to be defeated in this way. (*Matter of Jones* v. *Willcox*, 80 App. Div. 167, 171; *People ex rel. Tyng* v. *Prendergast*, 164 N. Y. Supp. 1042; affd., 178 App. Div. 895; 221 N. Y. 659.)

In the last case cited Justice SHEARN said at page 1049: " A reduction of salary is not a discrimination, and could not be a discrimination, unless there were several in one grade or class and the reduction did not apply to all. A reduction of salary effects neither a complete nor a partial discharge, unless the salary is reduced below a proper living wage, and there is no such claim in this case."

In the case now before the court we have all the elements present stated in the opinion, to wit, that the constables bringing this proceeding constituted one grade and the reduction does not apply to all, and the further fact the salaries fixed are below a proper living wage, and obviously made for a purpose. Some of the petitioners are veterans and exempt firemen, and they invoke the protection of the provisions of the Civil Service Law in this case. These give added reasons for the relief sought, but inasmuch as the referee has reached the conclusion that section 465 of the Town Law gives a complete remedy the referee has not undertaken to discuss in this opinion the rights of the parties under those acts.

While the referee thinks that under the issues framed the petitioners are entitled to a peremptory mandamus, nevertheless, he has chosen to treat the proceeding as one for an alternative mandamus and considered any evidence touching such issues offered on behalf of the petitioners.

The defendants contend the petitioners have mistaken their remedy and that instead of a mandamus proceeding they should have instituted one by way of certiorari to review the proceedings of the town board.

This proceeding, while peculiar in many of its features, is one really to compel the town board to reinstate the petitioners to the rights to which they are entitled under and by virtue of section 465 of the Town Law. This by way of appropriate board action to that end. It is true the petition necessarily sets out the petitioners' status up to the time of the meeting of January first and the action then taken, but after all it is not so much a proceeding to review the board's action as to compel the board to take action in accordance with the provisions and purposes of the section in question. We are of the opinion that mandamus is the proper remedy.

An order of mandamus should issue addressed to the members of the town board requiring them to meet with all reasonable dispatch and fix and determine in good faith the salaries of the petitioners at a reasonable living wage without discrimination against the members of the force of constables in the same grade and class.

So ordered.