**Murray P. BENJAMIN, Plaintiff,**

v.

**The TOWN OF FENTON, Donald J. Grunder as Town Supervisor, Louise Martin, John Broderick, William Smith and Edward Banks, as Town Councilmen, Defendants.**

**Civ. No. 94–CV–1631 (FJS).**

United States District Court,
N.D. New York.

July 7, 1995.

---

Coughlin & Gerhart, Binghamton, NY (Paul J. Sweeney, of counsel), for plaintiff.

Hinman, Howard & Kattell, Binghamton, NY (Albert J. Millus, Jr., of counsel), for defendants.

### DECISION AND ORDER

SCULLIN, District Judge.

### INTRODUCTION

Presently before the Court are plaintiff's and defendants' cross-motions for summary judgment arising out of an Article 78 petition filed in the New York State Supreme Court, Broome County. The Article 78 petition al-

leged various state procedural violations and also purported to allege federal and state Constitutional violations. Defendants' removed the action to this Court based on federal question jurisdiction. 28 U.S.C. § 1441(b). Plaintiff later amended his petition to include a request for attorneys' fees under 42 U.S.C. § 1988.

## BACKGROUND

The Town of Fenton, population 9,000, presently employs two Town Justices, Justice Benjamin and Justice Martin. Up until January 1, 1995 both Justices were paid the same salary, which most recently reached $11,906 annually. From as early as 1992, the Town Board raised concerns about the cost of their local government and, as part of these concerns, discussed lowering their Town Justices' salaries. The Justices were able to fend off salary cuts in 1993 and 1994 and actually received a 4.5% pay raise and a pay freeze in those years respectively.

One reason that the Justices' salaries were not reduced in 1994 was that an attorney for the Justices informed the Town Board of a recent legal precedent that held that "a reduction in salary of a Town Justice during the Justice's elective term constitutes an impermissible encroachment upon the independence of the judiciary." *Catanise v. Town of Fayette*, 148 A.D.2d 210, 543 N.Y.S.2d 825 (1989). At that time both Justices were midterm—Justice Benjamin's term would conclude at the end of 1994 and Justice Martin's at the end of 1996.

As the end of 1994 approached, the Justices' salaries were discussed again, with particular regard to Justice Benjamin's position, which was about to start a new term. Justice Benjamin won re-election to his post on November 8, 1994. The next day a public hearing was held regarding the Town's preliminary budget for 1995. At that meeting, the proposed budget listed the salary for Justice Benjamin's position as $11,906. No discussions were held concerning that salary. One week later another public meeting was held, ostensibly for the purpose of discussing a zoning issue. At that meeting, on Novem-

ber 16, 1994, the Board voted to reduce Justice Benjamin's salary from $11,906 to $6,500,[1] and ultimately adopted the lower salary as part of the final budget. In the final budget, the other Town Justice's salary was frozen at the previous year's rate of $11,906, the Town Councilmen's salary was frozen at $6,500 and the Town Supervisor's salary was frozen at $14,085.

Justice Benjamin claims that the salary disparity between himself and Justice Martin violates his rights to equal protection and due process of laws, he also claims that the Board's decision was arbitrary and capricious, exceeded their authority and was done in error of law and lawful procedure.

Defendants claim that the salary disparity is rationally related to the legitimate state purpose of fiscal responsibility and was procedurally proper.

## DISCUSSION

### I. SUMMARY JUDGMENT STANDARDS

■ Summary judgment is appropriate only when the moving party shows that no genuine issue of material fact exists as a matter of law. *See, e.g.,* Fed.R.Civ.Proc. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). An unresolved factual issue is one that a reasonable fact-finder could decide in favor of either party. *Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511.

### II. FEDERAL JURISDICTION

The Court notes at the outset that although the plaintiff has not specifically alleged a 42 U.S.C. § 1983 action, the amended petition added a request for attorneys' fees under 42 U.S.C. § 1988 and also alleged that jurisdiction is based on 28 U.S.C. § 1343, the statute that provides federal courts with original jurisdiction over actions based on civil rights statutes. Accordingly, despite plaintiff's unartful pleading, the Court will treat the petition as alleging a claim under 42 U.S.C. § 1983 for violation of federal equal protection and due process rights, and alleg-

---

1. The vote was 4–0 with 1 abstention.

ing state law claims for violation of state equal protection and due process rights and for Article 78 review. *See, e.g., Conrad v. County of Onondaga Examining Board for Plumbers,* 758 F.Supp. 824 (N.D.N.Y.1991). Therefore, removal was proper under 28 U.S.C. § 1441(b), and this Court has subject matter jurisdiction.

## III. EQUAL PROTECTION

■ Plaintiff alleges that defendants' decision to reduce plaintiff's salary and not to reduce Justice Martin's salary violates his right to equal protection of the law.[2]

■ Equal protection analysis requires differing levels of scrutiny depending on the claim alleged. Where the alleged classification is not based on a suspect class or does not impair a fundamental right, the classification and the actions are reviewed on a "rational basis" standard, *i.e.,* whether the legislative judgements are rationally related to a legitimate state purpose. *See Image Carrier Corp. v. Beame,* 567 F.2d 1197, 1203 (2d Cir.1977), *cert. denied,* 440 U.S. 979, 99 S.Ct. 1785, 60 L.Ed.2d 239 (1979). Here, the classification implicates only economic interests and, accordingly, the Court will employ the "rational basis" standard.

"The rational basis standard has two prongs: (1) the challenged action must have a legitimate purpose and (2) it must have been reasonable for the lawmakers to believe that use of the classification would promote that purpose." *New York City Managerial Employees Assoc. v. Dinkins,* 807 F.Supp. 958, 965 (S.D.N.Y.1992) (citations omitted).

### A. Legitimate Purpose

■ "In addressing the first prong of the rational basis test—whether the governmental purpose is legitimate—the governmental action will be upheld if the court can 'conceive' of a legitimate governmental purpose." *Dinkins,* 807 F.Supp. at 965 (quoting *United States R.R. Retirement Board v. Fritz,* 449 U.S. 166, 179, 101 S.Ct. 453, 461–62, 66 L.Ed.2d 368 (1980)). In this regard, "the

articulated governmental purpose is presumed to be true unless the facts clearly establish otherwise." *Id.* Here, defendants contend that their purpose in reducing plaintiff's salary was to save money. Defendants have submitted affidavits and documentary evidence that they were concerned with economizing their governmental operations and with reducing salary levels. Defendants had commissioned studies on streamlining their local government, and, although plaintiff's was one of the only salaries reduced in the 1995 budget, the Councilmen's and the Supervisor's salaries were frozen at their 1994 levels.

■ Plaintiff does not dispute that budgetary savings is a valid purpose, rather he contends that savings is not really defendants' purpose. Plaintiff contends that defendants' true purpose was political paybacks, specifically that the Town Supervisor was retaliating against plaintiff because the Supervisor's son had earlier pleaded guilty to charges before Justice Martin, and because Justice Benjamin's associate had supported the Supervisor's opponent in the recent election. Plaintiff also contends that his prior salary was commensurate with other, similar jurisdictions. "It is a fundamental principle of equal protection analysis, however, that this court must accept defendants' stated objectives as true absent a factual showing by plaintiff[ ] that such objectives could not have been the real objectives." *Id.* at 966. Plaintiff has not made the requisite factual showing here and has only put forth conjecture and speculation. Therefore the Court finds that defendants' stated purpose—to save money—was its true purpose.

■ Because "there can be no question that generating budget savings . . . is a legitimate governmental purpose," the Court finds that defendants' purpose here was legitimate. *Id.*

### B. Rational Relationship Between the Classification and Defendants' Actions

■ "Ultimately, to establish an equal protection violation, plaintiff[ ] must demon-

---

**2.** The Equal Protection Clause of the state constitution is co-terminus with the federal Equal Protection Clause and therefore this analysis is ap-

plicable to both claims. *New York City Managerial Employees Assoc. v. Dinkins,* 807 F.Supp. 958 (S.D.N.Y.1992).

strate that the classifications chosen by defendants are ' "so unrelated to the achievement of any combination of legitimate purposes that [this Court] can only conclude that [their] actions were irrational." ' " *Dinkins*, 807 F.Supp. at 970 (quoting *Gregory v. Ashcroft*, 501 U.S. 452, 111 S.Ct. 2395, 115 L.Ed.2d 410 (1991)). Here, defendants based their classification on which Justice was about to begin a term and which Justice was mid-term. The plaintiff claims that this classification is arbitrary and is not rationally related to the purpose of saving money. Plaintiff claims that both Justices do the same exact work, that plaintiff is the more senior of the two Justices and that the level of salary reduction is unreasonable.

■ A review of the classification and the constraints the Town was operating under, however, supports the conclusion that the classification is rationally related to the salary reduction. The power to set the salaries of Town employees is vested in the State. N.Y. Const., art. XII, § 14. The State has delegated that power to Town Boards. New York Town Law § 27(1) (McKinney 1994). While the Town Board may set the salary of a Town Justice after he is elected and prior to the beginning of his term, *Bartlett v. Morgan*, 42 A.D.2d 435, 348 N.Y.S.2d 418 (1973), it may not reduce a Town Justice's salary mid-term. *Catanise v. Town of Fayette*, 148 A.D.2d 210, 543 N.Y.S.2d 825 (1989). Thus the Town Board must wait until the end of a Justice's term to reduce his or her salary. Moreover, New York Town Law § 27 specifically provides that "[i]n all towns the salaries of all town justices shall be equal except that the town board may determine by a majority vote to pay salaries in different amounts." Accordingly, the classification distinguishing between whether a Justice is mid-term or beginning a new term is rationally related to the salary reduction and the goal of saving money. *See Musser v. Morton*, 639 F.2d 309 (6th Cir.1981) (disparate pay between newly elected officials and mid-term officials does not offend equal protection).

Plaintiff contends that the Town should have altered the Justices' terms so that they end at the same time and so all Justices' salaries could be changed at once, or alternatively, the Town should have reduced plaintiff's salary in smaller increments. However, the Court will not evaluate whether the classification defendants chose was the best way to accomplish their purpose. "As long as the classificatory scheme chosen ... rationally advances a reasonable and identifiable governmental objective [the Court] must disregard the existence of other methods of allocation." *Dinkins*, 807 F.Supp. at 965–66 (citations omitted).

Plaintiff's reliance on *Weissman v. Evans*, 56 N.Y.2d 458, 452 N.Y.S.2d 864, 452 N.Y.S.2d 864 (1982) and similar cases is misplaced. *Weissman* struck down a state-imposed salary disparity that existed among state judges of different geographic locations. *Weissman*, 452 N.Y.S.2d at 866, 438 N.E.2d at 399. However, that case held that there was no rational relationship between geographic location and the judges' compensation. *Id.; see also Barth v. Crosson*, 199 A.D.2d 1050, 607 N.Y.S.2d 200 (1993); *Vogt v. Crosson*, 199 A.D.2d 722, 606 N.Y.S.2d 57 (1993); *Davis v. Rosenblatt*, 159 A.D.2d 163, 559 N.Y.S.2d 401 (1990). In contrast, the defendants here have shown that there is a rational relationship between the end-of-term and mid-term justices and the salary reduction.[3]

In accordance with the foregoing analysis, the defendants are granted summary judgment on the federal and state equal protection claims.

## IV. SUBSTANTIVE DUE PROCESS

"Substantive due process protects individuals against government action that is arbitrary, ... conscience-shocking, ... or oppressive in a constitutional sense, ... but not against government action that is 'incorrect or ill-advised'.... Moreover, government action might be so arbitrary that it violates

---

3. The Court's current conclusion does not foreclose plaintiff from raising this issue again at another time. If the other Justice's term ends, or a new Justice position is created, and that Justice is given a higher salary than plaintiff, the Town Board may no longer be able to rely on the *Catanise* case as a rational basis for the classification.

substantive due process 'regardless of the fairness of the procedures used.'" *Lowrance v. Achtyl,* 20 F.3d 529, 537 (2d Cir.1994).

 Initially, to prove a due process violation, the plaintiff must show that he has a life, liberty or property interest that is impaired. "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must instead, have a legitimate claim of entitlement to it." *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972).

 Plaintiff does not claim to have a property interest in a particular level of salary at the beginning of his term, and thus does not base his due process claim on his salary alone. Rather, plaintiff claims that he has a property right in his job as elected Town Justice and that defendants have effectively removed him from his job without due process by reducing his salary beyond a reasonable amount. The plaintiff claims that the reduction in his salary from $11,906 to $6,500 had nothing to do with saving money, but was really an attempt to remove him from office.

Plaintiff relies upon the dated case of *Bogacki v. Zolemski,* 143 Misc. 140, 256 N.Y.S. 166 (1932), *aff'd,* 238 A.D. 764, 261 N.Y.S. 1036 (1933). There the New York Supreme Court, Erie County, found that the Town Board acted in bad faith when it reduced certain constables' salaries from $150 per month to $60 and $20. The court took judicial notice that a salary of $60 or $20 per month for a town constable was not a "living wage." *Id.* 256 N.Y.S. at 174. Plaintiff here, however, has not shown to the Court that $6,500 is an unreasonably low wage or that the salary action was instituted to oust plaintiff. In this regard, the Court notes that even though the plaintiff and the Town Councilmen perform different jobs, the Councilmen's salary is also $6,500.

The Court holds that defendants' action was not arbitrary, conscience-shocking, or oppressive in a constitutional sense. Therefore defendants are granted summary judg-ment as to the federal and state due process claims.

## V. ARTICLE 78 CLAIMS

Because the Court has dismissed all the claims over which it has original jurisdiction, it declines to exercise supplemental jurisdiction over the state law Article 78 claims. 28 U.S.C. § 1637.

Therefore it is hereby

ORDERED that plaintiff's motion for summary judgment is DENIED; and it is further

ORDERED that defendants' motion for summary judgment is GRANTED as to the claims based on violations of equal protection and due process of laws and the complaint is DISMISSED as to those claims; and it is further

ORDERED that the Court DECLINES to exercise supplemental jurisdiction over the state law Article 78 claims and those claims are REMANDED to the New York State Supreme Court, Broome County.

**IT IS SO ORDERED.**