■ IRVING B. KENDALL, Respondent, v HERBERT B. EVANS, as Chief Administrative Judge of the State of New York, et al., Appellants.—In an action, inter alia, for a judgment declaring Judiciary Law § 39 unconstitutional insofar as it promulgated unfavorable salary differentials between a Judge of the City Court of the City of Mount Vernon and the Judges of the City Courts of the Cities of White Plains and Yonkers, the defendants appeal from an order of the Supreme Court, Westchester County (Slifkin, J.), entered July 10, 1985, which granted

the plaintiff's motion for summary judgment and, *inter alia,* declared the subject salary differentials unconstitutional.

Ordered, that the order is affirmed, with costs, and the matter is remitted to the Supreme Court, Westchester County, for further proceedings consistent herewith.

The plaintiff, a retired Judge of the City Court of the City of Mount Vernon, sought a judgment declaring the perpetuation, subsequent to the enactment of the Unified Court Budget Act on April 1, 1977, of an unfavorable salary disparity between himself and the Judges of the City Courts of White Plains and Yonkers to be violative of the equal protection clause. The disparate financial treatment had its origins in the prior system, in which the salaries of Judges were determined and financed in part by the localities in which they served. While the avowed purpose of the legislation was to "enable the allocation of moneys and manpower when needed unimpeded by artificial local boundaries and the diverse competing needs of local governmental agencies" (L 1976, ch 966, § 1), the act nevertheless maintained the salary disparities, both in its original form (Judiciary Law § 220 [6] [a], as added by L 1976, ch 966, § 2) and in subsequent enactments and amendments (Judiciary Law § 221-g, as added by L 1979, ch 55, § 2; Judiciary Law § 221-i, as added by L 1984, ch 986, § 10, as amended by L 1985, ch 434, § 1; L 1985, ch 656, § 4). This occurred despite repeated recommendations that the salaries of full-time City Court Judges be equalized, from, among others, Chief Administrative Judge Herbert Evans in 1979, who viewed the disparities as "neither necessary, desirable or equitable" and Chief Administrative Judge Robert J. Sise, who, in a 1983 proposal, termed the State's inheritance of responsibility for a "hodgepodge of court structures and courts with * * * a judicial pay scale fraught with obvious inequities * * * an undesirable stain on the Unified Court System". Indeed, the brief submitted on behalf of the appellant Evans states that the position of Chief Administrative Judge Joseph Bellacosa is that "[a]s a matter of policy, the salaries of all full-time City Court Judges should be equal".

Turning now to the law, it is clear that the geographical distinctions created by the State budgetary act must be predicated upon a rational basis to survive an equal protection challenge *(Cass v State of New York,* 58 NY2d 460; *Weissman v Evans,* 56 NY2d 458). The test of rationality is satisfied after ascertaining "the basis of the classification involved and the governmental objective purportedly advanced by [comparing] * * * [t]he classification * * * to the objective to determine

whether the classification rests 'upon some ground of difference having a fair and substantial relation' to the object for which it is proposed *(Reed* v. *Reed,* 404 U. S. 71, 76 * * *)" *(Matter of Abrams v Bronstein,* 33 NY2d 488, 492-493).

The application of such an analysis compels us to agree with Special Term's conclusion that no rational basis exists for the geographic salary classifications here challenged. The statistical information and analyses thereof submitted by the plaintiff in support of his motion for summary judgment demonstrate the similarities in the functions, duties and responsibilities of the Judges of the City Courts of the Cities of Yonkers, White Plains, and Mount Vernon *(see, e.g.,* UCCA), which are all located in Westchester County and are virtually contiguous, and that, for practical purposes, as Judicial Conference data certify, their caseloads are substantially the same. The census information submitted by the defendants State of New York and Edward V. Regan, which allegedly establishes a rational basis for the Legislature's retention of the historical discrepancies in judicial salaries insofar as they are predicated upon city-wide "disparities in population, caseload, and cost of living" *(Cass v State of New York, supra,* at p 464), do not reveal otherwise. The statistical information neither supports those defendants' claim that significant distinctions exist among the three cities, nor does it in any way reveal the advancement of a legitimate State objective by the retention of the geographical distinction, which "directly contravene[s] the long-heralded and legislatively indorsed substitution of State for local control of the courts" *(Weissman v Evans, supra,* at p 466).

Thus, we agree with Special Term's conclusion that there is a " 'true unity of * * * judicial interest * * * indistinguishable by separate geographic considerations' " *(Weissman v Evans, supra,* at p 463) among the three City Courts and that the statutorily mandated disparate treatment is offensive to the plaintiff's constitutionally protected right to equal protection of the laws of this State.

Finally, we note that the basis for calculation of the retroactive salary increase and concomitant pension base adjustment sought by the plaintiff, to which he is hereby entitled *(see, Weissman v Evans, supra,* at pp 466-468), shall be the differential between the plaintiff's salary and that of the Judges of the City Court of the City of Yonkers. Thompson, J. P., Bracken, Rubin and Spatt, JJ., concur.