REUBEN K. DAVIS et al., Appellants-Respondents, v ALBERT ROSENBLATT, as Administrative Judge and Chief Administrator of the Courts of the State of New York, et al., Respondents-Appellants. (Action No. 1.)

H. BUSWELL ROBERTS et al., Respondents-Appellants, v ALBERT ROSENBLATT, as Chief Administrative Judge of the Courts of the State of New York, et al., Appellants-Respondents. (Action No. 2.)

JOHN MARIANO et al., Respondents-Appellants, v ALBERT ROSENBLATT, as Administrative Judge and Chief Administrator of the Courts of the State of New York, et al., Appellants-Respondents. (Action No. 3.)

THOMAS W. HIGGINS, JR., et al., Respondents-Appellants, v ALBERT ROSENBLATT, as Administrative Judge and Chief Administrator of the Courts of the State of New York, et al., Appellants-Respondents. (Action No. 4.)

Third Department, July 19, 1990

### APPEARANCES OF COUNSEL

*Robert J. Pearl* for appellants-respondents in action No. 1, and respondents-appellants in actions Nos. 3 and 4.

*William A. Price* for respondents-appellants in action No. 2.

*Michael Colodner (John Eiseman* of counsel), for Albert Rosenblatt, respondent-appellant in action No. 1 and appellant-respondent in actions Nos. 2, 3 and 4.

*Robert Abrams, Attorney-General (Frank K. Walsh* of counsel), for Edward V. Regan and another, respondents-appellants in action No. 1, and appellants-respondents in actions Nos. 2, 3 and 4.

### OPINION OF THE COURT

HARVEY, J.

In each of these four actions, plaintiffs, who are current or former full-time City Court Judges of the Cities of Syracuse, Rochester, Buffalo and Niagara Falls, seek a judgment declaring that the disparity between their wages ($74,500 per year) and the wages paid to the City Court Judges of the City of

Yonkers ($81,000 per year) and the City of Utica ($78,000 per year) pursuant to Judiciary Law § 221-i violates their rights to equal protection of the laws under the State and Federal Constitutions *(see,* NY Const, art I, § 11; US Const, 14th Amend, § 1). As relief, the various plaintiffs have requested an award of back pay, related ancillary relief and counsel fees pursuant to 42 USC § 1988. Defendants in these actions are the State, its Comptroller and the Chief Administrative Judge of the Courts of New York. Defendants served answers in which they generally denied the allegations contained in plaintiffs' complaints and asserted various affirmative defenses, including the failure to state a cause of action and the Statute of Limitations. Subsequently, all plaintiffs moved for summary judgment on their complaints. In three of the actions, the Comptroller and the State cross-moved for summary judgment dismissing the complaints.

In action No. 1, Supreme Court, Monroe County, partially granted the Rochester plaintiffs' motion for summary judgment declaring that the salary disparity between Rochester City Court Judges and Utica City Court Judges violates the Rochester plaintiffs' equal protection rights. However, Supreme Court also held that the statute perpetuating the disparity between the salary of Rochester City Court Judges and Yonkers City Court Judges was not unconstitutional. The court ordered that the Rochester plaintiffs be awarded back pay and pension base adjustments, with interest, from October 1, 1978. The issue of counsel fees was not addressed. The Rochester plaintiffs and defendants now cross-appeal.

In action No. 2, Supreme Court, Erie County, partially granted the Buffalo plaintiffs' motion for summary judgment, declaring, *inter alia,* that the salary disparity between Buffalo City Court Judges and both Utica and Yonkers City Court Judges is unconstitutional. Accordingly, Supreme Court ordered that the Buffalo plaintiffs be awarded judgment for the differential between their salaries and those paid to Yonkers City Court Judges and for attendant benefit adjustments from October 1, 1978. The court denied the Buffalo plaintiffs' request for predecision and postdecision interest and for counsel fees, and denied the cross motions for summary judgment of the Comptroller and the State in all respects. The Buffalo plaintiffs and defendants now cross-appeal.

In action No. 3, Supreme Court, Niagara County, partially granted the Niagara Falls plaintiffs' motion for summary judgment, declaring that the salary disparity between Niagara

Falls City Court Judges and Utica City Court Judges is unconstitutional. However, Supreme Court concluded, as did Supreme Court in action No. 1, that the record establishes that a rational basis exists for the salary disparity between Niagara Falls and Yonkers City Court Judges. In addition, Supreme Court found the Statute of Limitations defense asserted by defendants to be without merit. Accordingly, Supreme Court ordered that the Niagara Falls plaintiffs be awarded back pay and pension base/benefit adjustments, with interest, from October 1, 1978. On the issue of counsel fees, Supreme Court ordered that the Niagara Falls plaintiffs are entitled to an award of such fees, unless defendants are able to establish special circumstances militating against such an award. The Niagara Falls plaintiffs and defendants now cross-appeal.

Finally, in action No. 4, Supreme Court, Onondaga County, partially granted the Syracuse plaintiffs' motion for summary judgment, declaring that the salary disparity between Syracuse City Court Judges and their counterparts in Utica and Yonkers is without a rational basis and therefore unconstitutional. In so doing, Supreme Court rejected the Statute of Limitations defense raised by the Comptroller and the State and denied the Syracuse plaintiffs' request for counsel fees. Accordingly, Supreme Court ordered that the Syracuse plaintiffs be awarded back pay and pension base/benefit adjustments, with interest, from October 1, 1978. The Syracuse plaintiffs and defendants now cross-appeal.

Initially, we must reject the contention of the State and its Comptroller (hereinafter collectively referred to as the State) that certain of the plaintiffs in all four actions are precluded from maintaining their actions because of the Statute of Limitations.[1] The State concedes that, with respect to the current City Court Judges, their claims for declaratory relief invalidating the applicable statute cannot be barred by the Statute of Limitations because a cause of action for a continuing harm continuously accrues (see, *Amerada Hess Corp. v Acampora*, 109 AD2d 719, 722; 1 Weinstein-Korn-Miller, NY Civ Prac ¶ 213.04). As for those Judges who had left the City Court Bench for various reasons because of retirement or career changes, however, the State advances several different time limitations by which to measure their

---

1. The Chief Administrative Judge does not argue the Statute of Limitations issue on this appeal.

claims. Nonetheless, it is clear that the only appropriate limitation period is the six-year residuary Statute of Limitations provided by CPLR 213 (1). Applying this period to the claims of those plaintiffs who are former City Court Judges, only the claim of Syracuse plaintiff Mary M. Fahey, as executrix of the estate of James Fahey who left the Syracuse City Court Bench in October 1981, is time barred. This is because the Syracuse action (action No. 4) was not commenced until February 1988, approximately four months after the limitations period had run.

With the Statute of Limitations issue disposed of, we now turn to the merits of the remaining plaintiffs' claim that no rational basis exists for the disparity between plaintiffs' salaries as City Court Judges and those of City Court Judges in the Cities of Yonkers and Utica.[2] At the outset we note that the history behind the well-litigated issue of judicial pay disparity since the enactment of the Unified Court Budget Act of 1976 (L 1976, ch 966) is well documented. Along with reorganizing and unifying the court system, the takeover was implemented in order to "enable the allocation of moneys and manpower * * * unimpeded by artificial local boundaries and the diverse competing needs of local governmental agencies" (L 1976, ch 966, § 1). As a result, the majority of the State's judiciary employees were placed on its payroll (see, Judiciary Law § 39 [6]). This restructuring included City Court Judges. The State assumed full responsibility for establishing the compensation of all City Court Judges and for budgeting and appropriating sufficient funds therefor. Prior to that time, salaries for City Court Judges throughout the State were determined by local legislative bodies and were frequently the result of historic decisions reflecting local philosophies, finances and concerns. The disparate salary structures that resulted were thereafter reflected in and perpetuated after the takeover by the salaries set forth in Judiciary Law former § 221-g and still exist to some extent in the present Judiciary Law § 221-i. This remains so despite the repeated requests and recommendations from, among others, successive Chief Administrative Judges (see, Kendall v Evans, 126 AD2d 703, 704, affd 72 NY2d 963) and the Office of Court Administration that the disparities in pay between all Judges with similar duties,

---

2. Regarding this issue, the Chief Administrative Judge merely takes the position that the salaries of all full-time City Court Judges should be equal without taking a position on whether this parity is constitutionally required.

including all full-time City Court Judges, be eliminated. To date, these requests have not been heeded. In response to this situation, numerous lawsuits involving various courts and members of the judiciary have ensued challenging the applicable statutes on equal protection grounds *(see, e.g., Cass v State of New York,* 58 NY2d 460; *Weissman v Evans,* 56 NY2d 458; *Weissman v Bellacosa,* 129 AD2d 189; *Kendall v Evans,* 126 AD2d 703, *supra; Mackston v State of New York,* 126 AD2d 710; *Edelstein v Rosenblatt,* NYLJ, May 8, 1990, at 29, col 5; *Deutsch v Crosson,* NYLJ, Apr. 20, 1990, at 29, col 5).

While many of these suits attacking this unpopular legislative scheme have been successful, it has nonetheless been demonstrated that unpopularity alone is not enough to meet the strict standards for striking statutes on constitutional grounds *(see, Cass v State of New York, supra; see also, Cheeseman v Bellacosa,* 130 AD2d 920, *lv denied* 70 NY2d 612). It is well established in this State that legislation will be presumed valid and will be sustained so long as the classification created by the statute is rationally related to a legitimate State interest *(see, Matter of Tolub v Evans,* 58 NY2d 1, 8, *appeal dismissed* 460 US 1076; *see also, Trump v Chu,* 65 NY2d 20, 25, *appeal dismissed* 474 US 915; *Maresca v Cuomo,* 64 NY2d 242, 250, *appeal dismissed* 474 US 802). With respect to geographical classifications such as the ones in the instant lawsuits, equal protection does not require territorial uniformity, but " '[a] territorial distinction which has no rational basis will not support a state statute' " *(Weissman v Evans,* 56 NY2d 458, 465, *supra,* quoting *Manes v Goldin,* 400 F Supp 23, 29, *affd* 423 US 1068; *see, Matter of Tolub v Evans, supra).*

With the foregoing analysis in mind, we turn first to the constitutionality of the legislation (Judiciary Law § 221-i, and Judiciary Law former § 221-g) perpetuating the disparity between plaintiffs' salaries and that of the Utica City Court Judges. In dealing with legislation providing different salaries to Judges of coordinate jurisdiction who had similar duties, functions, responsibilities and caseloads who were located within one county or adjoining counties where there were no significant differences in either population or cost of living, the Court of Appeals and the Second Department have held that an equal protection violation existed *(see, e.g., Weissman v Evans,* 56 NY2d 458, *supra; Weissman v Bellacosa,* 129 AD2d 189, *supra; Kendall v Evans,* 126 AD2d 703, *supra; Mackston v State of New York,* 126 AD2d 710, *supra).* In each of the aforementioned cases, the courts found that the disparate

treatment was unjustified since there was a " 'true unity of * * * judicial interest * * * indistinguishable by separate geographic considerations' " *(Weissman v Evans, supra,* at 463; *see, Weissman v Bellacosa, supra,* at 193; *Kendall v Evans, supra,* at 705; *Mackston v State of New York, supra).*

■ Here, the record does not support the State's position that a rational basis exists for the salary disparity between the Rochester, Buffalo, Syracuse and Niagara Falls plaintiffs and the Utica City Court Judges. These parties do not dispute that the duties and responsibilities of all plaintiffs are equal to those of the City Court Judges in Utica. Further, the average caseload of Niagara Falls and Syracuse City Court Judges is roughly comparable to that of Utica City Court Judges while the record establishes that the caseload of the Rochester and Buffalo plaintiffs is greater than that of Utica City Court Judges. With respect to population and cost of living, it .is clear on the record that both are greater in Rochester, Buffalo and Syracuse than in Utica. Although the population and cost of living appear to be somewhat lower in Niagara Falls than in Utica, the difference is not significant *(see, Cass v State of New York,* 58 NY2d 460, 464, *supra; Weissman v Bellacosa,* 129 AD2d 189, 194, *supra).* Finally, because Rochester, Buffalo, Syracuse, Niagara Falls and Utica are all located within upstate counties which comprise the Fourth Department, there exists a " 'true unity of * * * judicial interest * * * indistinguishable by separate geographic considerations' " *(Weissman v Evans,* 56 NY2d 458, 463, *supra).* Accordingly, we must conclude, based on the foregoing, that the State has not met its burden of establishing that a rational basis exists for the disparity in salaries between plaintiffs and the Utica City Court Judges.

■ Turning to the issue of plaintiffs' salaries in comparison with those of Yonkers City Court Judges, we are constrained to arrive at a different conclusion. In *Cass v State of New York* (58 NY2d 460, *supra),* the Court of Appeals denied declaratory relief to certain County Court, Family Court and Surrogate's Court Judges who challenged legislation providing higher salaries to Judges of coordinate jurisdiction in the New York City metropolitan area, concluding that State-wide disparities in population, caseload and cost of living provided a rational basis for the disparate salaries. The court held that when a rational basis exists for a classification enacted by the Legislature, "the fact that the general statutory scheme, when applied on a State-wide basis, may produce some inequities for

certain Judges within a particular class does not render the statute unconstitutional" *(supra,* at 464). Here, in comparing the information in the record contrasting the situations of plaintiffs and their Yonkers counterparts, it is apparent that the State's contention that a rational basis exists for the salary disparity between plaintiffs and Yonkers City Court Judges is sufficiently supported.

In each case, the record establishes that the duties, functions and responsibilities of the Judges in plaintiffs' cities are the same as the Yonkers City Court Judges. The over-all caseload is also roughly comparable although that in Niagara Falls is clearly less than that of Yonkers. With respect to population, that of the City of Yonkers exceeds that of Niagara Falls and Syracuse, but is less than that of Rochester and Buffalo. With respect to cost of living, the State has submitted data which indicates that the cost of living in Westchester County generally, and in the City of Yonkers specifically, is greater than the cost of living in all of the subject cities. Examining this information, it is clear that the State has established a rational relationship between higher New York City area salaries and the State's objective of ensuring "that the limited resources available for courts are allocated according to need and utilized effectively" (L 1976, ch 966, § 1). Although plaintiffs dispute the accuracy and reliability of the cost-of-living information provided by the State, they have failed to provide alternative information. In any event, since plaintiffs' courts are all located within upstate counties within the Fourth Department and the City of Yonkers is located in Westchester County in the Second Department, it cannot easily be concluded that a true unity of judicial interest has been established. The law is clear that as long as any conceivable statement of facts will support a classification by the Legislature, it cannot be held to be violative of equal protection *(see, Maresca v Cuomo,* 64 NY2d 242, 250, *supra).* Accordingly, upon the record presented here, it cannot be maintained that the State has failed to establish a rational basis for the retention of geographically disparate salaries between plaintiffs and the Yonkers City Court Judges.

■ But we also conclude that the applicable legislation is unconstitutional insofar as it denies plaintiffs' rights to equal protection of the laws in relation to their Utica counterparts. Consistent with the positions taken by the decisions of Supreme Court, plaintiffs should be awarded back pay and pension base adjustments from October 1, 1978 so as to

achieve parity with Utica City Court Judges *(see, Weissman v Evans, supra; Weissman v Bellacosa, supra; Deutsch v Crosson, supra)*. However, the back pay awards should not include prejudgment interest pursuant to CPLR 5001 (a) *(see, Matter of Gordon v Board of Educ.,* 52 Misc 2d 175, 177)*.

Since plaintiffs have successfully contended that they have been denied their right to equal protection, a claim cognizable under 42 USC § 1983, the actions must be remitted to the respective Supreme Courts so as to allow defendants "an opportunity to demonstrate whether special circumstances exist which would bar an award of counsel fees [pursuant to 42 USC § 1988]" *(Weissman v Bellacosa,* 129 AD2d 189, 197, *supra; see, Edelstein v Rosenblatt,* NYLJ, May 8, 1990, at 29, col 5, *supra)*.

KANE, J. P., CASEY, LEVINE and MERCURE, JJ., concur.

Order and judgment in action No. 1 modified, on the law, without costs, by reversing so much thereof as granted the Rochester plaintiffs' motion for prejudgment interest from October 1, 1978 and deferred on the issue of counsel fees; motion for prejudgment interest denied and matter remitted to the Supreme Court, Monroe County, for further proceedings not inconsistent with this court's decision; and, as so modified, affirmed.

Order and judgment in action No. 2 modified, on the law, without costs, by reversing so much thereof as granted the Buffalo plaintiffs' motion requesting a declaration that the legislation permitting the salary disparity between the Buffalo plaintiffs and Yonkers City Court Judges to be unconstitutional, awarded judgment for that differential and denied the Buffalo plaintiffs' request for counsel fees; judgment awarded for the differential between the salary of the Buffalo plaintiffs and that of Utica City Court Judges and matter remitted to the Supreme Court, Erie County, for further proceedings not inconsistent with this court's decision; and, as so modified, affirmed.

Order and judgment in action No. 3 modified, on the law, without costs, by reversing so much thereof as awarded prejudgment interest; matter remitted to the Supreme Court, Niagara County, for further proceedings not inconsistent with this court's decision; and, as so modified, affirmed.

Order and judgment in action No. 4 modified, on the law, without costs, by reversing so much thereof as found that none of the Syracuse plaintiffs' claims were barred by the

Statute of Limitations, granted the Syracuse plaintiffs' motion seeking a declaration that legislation establishing a salary disparity between the Syracuse plaintiffs and Yonkers City Court Judges to be unconstitutional and awarded back pay commensurate with the Yonkers salary, together with prejudgment interest, and denied the Syracuse plaintiffs' request for counsel fees; complaint of plaintiff Mary H. Fahey dismissed, judgment awarded for the differential between the salary of the remaining Syracuse plaintiffs and that of Utica City Court Judges and matter remitted to the Supreme Court, Onondaga County, for further proceedings not inconsistent with this court's decision; and, as so modified, affirmed.