OPINION OF THE COURT
Rosemary S. Pooler, J.
The plaintiffs, who are County Court Judges serving in Onondaga County, seek summary judgment on their claim that the Equal Protection Clauses of the Federal and State Constitutions require that they be paid the same salary as County Court Judges serving in 13 other counties of the State. Two of these counties (Erie and Monroe) are in the Fourth Judicial Department; four (Albany, Clinton, Sullivan and Tompkins) are in the Third Judicial Department; and the remaining seven (Dutchess, Nassau, Orange, Putnam, Rock-land, Suffolk and Westchester) are in the Second Judicial Department. Plaintiffs’ salaries are $82,000 per year. County Court Judges in the other two Fourth Department counties earn $86,000 per year; the highest salaried Judges in the Third Department serve in Albany County and earn $90,000 *160 per year; and the highest salaried Judges in the Second Department serve in Nassau and Suffolk Counties and earn $95,000 per year. Plaintiffs also seek equalization of their salaries to the level paid a Court of Claims Judge ($95,000) who has been assigned to act as a Supreme Court Justice in Onondaga County and who handles criminal cases similar to those handled by plaintiffs. Finally, plaintiffs seek adjustment of their salaries retroactive to October 1, 1978.
Defendants Edward Regan, as Comptroller of the State of New York, and State of New York cross-move for summary judgment dismissing the complaint. Defendant Matthew T. Crosson, Chief Administrator of the Courts of the State of New York, has submitted an affidavit in response to plaintiffs’ summary judgment motion in which he states that as a matter of policy it is the position of his office that the salaries of all County Court Judges should be equal but that he takes no position on whether the Constitution demands such equality.
Plaintiffs’ proof, which is not factually controverted by the defendants, contains comparisons of the caseloads of Onondaga County Court Judges with the Judges in the comparator counties. It also compares populations of the counties, consumer price index figures (for 1982-1984) for the Syracuse/ Utica/Rome area (within Onondaga and adjoining Oneida County) and certain of the comparator counties, and housing costs between the Syracuse/Utica/Rome area and certain of the comparator counties.
The uncontroverted proof as to caseload indicates that from 1985 through 1989, each Onondaga County Court Judge averaged a total of 3,049.5 filings and dispositions for the five-year period.[1] This figure is higher than that of the Judges in any of the comparator counties. Figures for the other counties for *161 five-year caseload ranged from a low of 651.5 per Judge in Tompkins County to a high of 3,043 per Judge in Orange County.
The consumer price index (CPI) figures show only minimal differences in the cost of living among the metropolitan areas of the Third and Fourth Departments (Syracuse/Utica/Rome —123.992, Rochester — 124.073, Buffalo/Niagara Falls — 124.34 and Albany — 125.986). Second Department counties had CPI’s ranging from 135.65 to 136.443.
The populations of the counties, as shown in preliminary 1990 census figures, are: Albany (290,799), Clinton (85,128), Dutchess (258,277), Erie (962,366), Monroe (709,511), Nassau (1,272,308), Onondaga (461,092), Orange (303,771), Putnam (83,663), Rockland (not given), Suffolk (1,310,929), Sullivan (68,323), Tompkins (93,810), and Westchester (860,452).
As previously noted, defendants offer no proof but do allege that the differences among the various counties shown in plaintiffs’ proof are sufficient to support different salaries under constitutionally mandated equal protection standards.
Defendants Regan and State of New York also put forward a number of procedural defenses, most of which have been addressed by decisions of the Court of Appeals or the Appellate Divisions.
Relying on Will v Michigan Dept. of State Police (491 US 58 [1989]), they allege that neither the State of New York nor defendant Regan in his purely representative capacity can be a "person” under 42 USC § 1983 and therefore that as against these defendants, there is no cause of action under section 1983. This attack ignores the specific caveat of the Will decision to the effect that State officials acting in their representative capacity are not considered to be the State and therefore are "persons” in actions for injunctive relief. (Supra, 491 US, at 71, n 10.) Since this action is primarily one for declaratory and injunctive relief, both defendant Regan and defendant Crosson are considered "persons” for purposes of 42 USC § 1983. (See, Deutsch v Crosson, 171 AD2d 837 [2d Dept 1991].) Moreover, as to the State itself, although it may not be considered a person under section 1983, it is clearly a proper defendant in a case where the constitutionality of a statute is at issue. (Cass v State of New York, 58 NY2d 460, 463 [1983].) The Cass court premised its holding that the State was a proper party on two bases: first, that a declaratory judgment action in Supreme Court was an appropriate vehicle for *162 challenging the constitutionality of a statute and second, that the State has an "obvious interest in and right to be heard on matters concerning the constitutionality of its statutes.” (Supra, at 463.)
Defendants Regan and the State of New York also contend that much of what the plaintiffs challenge is barred by the applicable Statute of Limitations which they contend alternatively is the four-month article 78 Statute of Limitations (CPLR 217), the three-year limitation for a section 1983 action (see, Owens v Okure, 488 US 235 [1989]) or the six-year residual Statute of Limitations (CPLR 213 [1]). It has been established that the applicable Statute of Limitations for cases of this nature is the six-year statute for declaratory judgments and that because the harm done by denying salary parity is a continuing one, the Statute of Limitations does not begin to run while the plaintiffs are still employed and the disparity has not been remedied. (Davis v Rosenblatt, 159 AD2d 163, 168-169 [1990], appeal dismissed sub nom. Higgins v Rosenblatt, 77 NY2d 823; Deutsch v Crosson, 171 AD2d 837, supra.) Moreover, "this limitations period applies to when the primary action must be commenced (i.e., the declaratory judgment action) and does not circumscribe the number of years for which the ancillary relief of back pay may be awarded”. (Supra, at 838-839.)
Finally,[2] defendants allege that plaintiffs cannot, in any event, be awarded monetary relief, this type of relief being within the exclusive jurisdiction of the Court of Claims. (Court of Claims Act § 9.) While defendants would be correct were this an action primarily for monetary damages (Schaffer v Evans, 57 NY2d 992 [1982]), it is not; it is an action for declaratory and injunctive relief in which back pay is requested as an incident to the primary relief. (See, Davis v Rosenblatt, 159 AD2d 163 [3d Dept 1990], supra; Mackston v State of New York, 126 AD2d 710; Deutsch v Crosson, 171 AD2d 837, supra.)
Defendants’ contention that plaintiffs have failed to show a violation of equal protection in setting salary schedules for County Court Judge requires more extensive analysis. This analysis takes place against the backdrop of a large body of *163 case law relevant both to the general issue of equal protection where distinctions are made based on geographical considerations and the more specific issue of whether and when salary differentials for Judges based on geographic factors violate the equal protection guarantees of the Federal and State Constitutions.
Equal protection does not necessarily require territorial uniformity. (See, Weissman v Evans, 56 NY2d 458, 464-465.) However, a geographical classification which has no rational basis will not be sustained. (See, Weissman v Evans, supra, at 465.) Whether or not a classification has a rational basis is, in turn, governed by an examination of whether it has a " 'fair and substantial relation to the object of the legislation’ ” (Manes v Goldin, 400 F Supp 23, 29, affd 423 US 1068). It is not necessary to prove that the body passing the legislation was actually motivated by this relationship if the court can "hypothesize the motivations of the State Legislature to discern any conceivable legitimate objective promoted by the provision under attack”. (Maresca v Cuomo, 64 NY2d 242, 251 [1984].)
The case before me is just one of several cases attacking salary disparities among Judges having the same responsibilities and powers after the unification of the court system in 1977 with passage of the Uniform Court Budget Act. (L 1976, ch 966.) Prior to unification, each county set the level of compensation for its own County Court Judge. Salaries varied widely. Since unification, the differentials between counties have been by and large preserved by repeated acts of the Legislature. (L 1979, ch 55; L 1984, ch 986; L 1987, ch 263.)
The Court of Appeals has had three opportunities to pass on the constitutionality of various components of the Unified Court Budget Act.
In Weissman v Evans (supra), the court found unconstitutional the disparity in salaries between the District Court Judges of Nassau and Suffolk Counties. The court noted expert reports which found that the two counties constituted a " 'true unity of * * * judicial interest * * * indistinguishable by separate geographic considerations’ ”. (56 NY2d, at 463.) It found no rational basis for the geographic differential in salaries and indeed found the setting of different salaries for District Court Judges in Nassau and Suffolk Counties to be inimical to the Legislature’s goal of substituting State for local control. (56 NY2d, at 466.)
*164 In Cass v State of New York (58 NY2d 460 [1983], supra) the Court of Appeals limited the Weissman decision (supra). This case combined declaratory judgment actions by County Court Judges, Surrogates, and Family Court Judges State-wide who all claimed that the payment of higher salaries to Judges of coordinate jurisdiction in certain counties in the New York City area denied them equal protection. The court rejected this facial constitutional challenge, noting that "there are State-wide disparities in population, caseload, and cost of living which provide a rational basis for the Legislature to adopt price [sic] differentials for those serving in different areas of the State.” (58 NY2d, at 464.) In distinguishing Weissman, the court noted that it involved a very limited class, composed entirely of Judges of the District Court which exists only in two adjoining counties on Long Island where differences in population, cost of living, and caseload were not evident.
In Kendall v Evans (72 NY2d 963) the Court of Appeals affirmed for the reasons stated in the Appellate Division’s memorandum (126 AD2d 703), a decision declaring unconstitutional salary differentials between a Judge of the City Court of Mount Vernon and Judges of the City Courts of White Plains and Yonkers. The Appellate Division decision noted the similarities in functions, duties, responsibilities and caseloads of the Judges as well as their geographical proximity and determined that the standard of true unity of judicial interest indistinguishable by separate geographic considerations had been met. (126 AD2d, at 705.)
Precedent from New York’s highest court therefore addresses the two polar situations of a challenge to discrimination between areas which are in very close geographical proximity and which do not manifest significant differences in population, caseload or cost of living (Weissman v Evans, supra; Kendall v Evans, supra) and a State-wide challenge to facial constitutionality in which no factual data concerning population, caseload, or cost of living is furnished to the court (Cass v State of New York, supra [in which the record on appeal is devoid of such data]). The Appellate Divisions of the Second and Third Judicial Departments have since struggled to define the middle ground, i.e., exactly how close the geographical proximity and how similar the cost of living, population and caseload must be before a true unity of judicial interest indistinguishable by separate geographic considerations can be found to exist.
*165 In Mackston v State of New York (126 AD2d 710 [1987], supra) the Second Department found that two cities located within 10 miles of each other in Westchester County did constitute a true unity of judicial interest and therefore ordered that salaries in the two be equalized. As to a second plaintiff, however, the court found that0 certain census information indicating some disparities in population, caseload, and cost of living between cities located in two different counties precluded summary judgment.
The Second Department next spoke in Weissman v Bellacosa (129 AD2d 189 [1987]). Since this case involved the County Court Judges for Nassau and Suffolk Counties (the same two counties considered with respect to District Court Judges in Weissman v Evans, supra), the result (declaring the salary disparity to be unconstitutional) did not radically alter existing concepts. In the court’s analysis, it disregarded caseload differences of approximately 12 cases per year (248 for Suffolk versus 260 for Nassau) and found that there were no meaningful distinctions in population or cost of living. In making the latter determination, it noted that average and median house prices were slightly higher in Nassau than in Suffolk County (the plaintiff’s county), but found the over-all consumer price index to be a much more meaningful measure (the two counties shared the same CPI because they were part of the same Standard Metropolitan Statistical Area).
In Davis v Rosenblatt (159 AD2d 163 [1990], supra) the Third Department considered challenges by the Judges of the City Courts of Buffalo, Niagara Falls, Rochester and Syracuse to disparities between their salaries and those of the City Court Judges of Utica (also located in the Fourth Department) and Yonkers (located in the Second Department). The court found that there was no rational basis for the salary disparity between the plaintiffs and Utica City Court Judges. In so doing, it found that the duties and responsibilities of all the plaintiffs were equal to those of the Utica City Court Judges, that the average caseloads were either roughly comparable to or greater than those of the Utica City Court Judges and that population and cost of living were greater in Rochester, Buffalo and Syracuse than in Utica and slightly lower in Niagara Falls but not to a significant degree. Finally, it found the cities involved were all upstate cities located within the Fourth Department and that, therefore, the test of true unity of judicial interest was met.
*166 However, even though caseload, duties, functions, and responsibilities were roughly similar for plaintiffs and City Court Judges in Yonkers, the court found that differences in population and cost of living between the Fourth Department cities and Yonkers provided a rational basis sufficient to sustain a salary differential. (Davis v Rosenblatt, supra.)
Deutsch v Crosson (171 AD2d 837 [2d Dept 1991], supra) was a challenge by New York City Family Court Judges to a disparity between their salaries and those of Nassau County Family Court Judges. Nassau County is in the Second Department and New York City is in the First. The Appellate Division, Second Department, upheld the trial court’s decision that the salary disparity was unconstitutional. The trial court had found the populations served by plaintiffs to be comparable to or greater than the populations of the comparator counties, the cost of living to be higher, and the caseload to be comparable. (Deutsch v Crosson, NYLJ, Apr. 20, 1990, at 29, col 5.) It then stated (supra, at 30, col 1): "The five counties comprising New York City, Nassau and Suffolk constitute a true unity of judicial interest indistinguishable by separate geographic considerations. Plaintiffs and their counterparts in Nassau and Suffolk are so similarly circumstanced that the failure to treat them alike is blatantly offensive to plaintiffs’ right to equal protection of the laws of New York.”
It is undisputed that all County Court Judges interpret the same laws and have the same duties and responsibilities. In Onondaga County, Judges who have caseloads higher than Judges in any of the 13 comparator counties are being paid at the lowest rate in the State. Costs of living in the Syracuse/ Utica/Rome area (Onondaga and Oneida Counties) are virtually indistinguishable from those in the other metropolitan areas of the Fourth Department while the cost of living in the Syracuse/Utica/Rome area is less than two percentage points lower than that in the Albany area. Onondaga County’s population is greater than that of all the Third Department comparator counties, lower than Erie and Monroe Counties and higher than some of the Second Department counties but substantially lower than others.
Davis v Rosenblatt (supra) compels equalization of plaintiffs’ salaries to those of Judges in Erie and Monroe Counties unless population is a sufficient distinguishing factor. In Davis, where the Third Department found the entire Fourth Department to constitute a true unity of judicial interest, Judges in counties with higher populations (Erie, Monroe, Onondaga) *167 were paid less than Judges in counties with lower populations. In this case, the plaintiffs are from Onondaga County whose population is smaller than that of Erie and Monroe Counties. For several reasons, I find this distinction insufficient to support a different result. First, the relationship between population and the goals served by the Unified Court Budget Act is entirely unclear apart from the impact population has on caseload, and caseloads in Onondaga County are actually higher than those in Erie and Monroe Counties. (Cf., Edelstein v Rosenblatt, NYLJ, May 8, 1990, at 29, cols 5-6 [population only relevant as a population/per Judge ratio].) In addition, Onondaga County has fewer Judges than either Erie or Monroe which undercuts any relevance population might have. (See, Edelstein v Rosenblatt, supra.) Finally, although the actual motives of the State Legislature may be irrelevant under Maresca v Cuomo (supra), there is clearly no consistent pattern across the State linking population with salary.
Therefore, plaintiffs’ salaries must, to satisfy equal protection, be at least as high as those of County Court Judges in Erie and Monroe Counties.
Moreover, I discern no "separate geographic considerations” which differentiate the Syracuse metropolitan area from that of Albany. The population of Albany County is less than that of Onondaga County, the caseload is slightly lower and the cost of living is higher but not in a significant amount. Both Albany and Onondaga Counties contain a major city with surrounding suburban areas. Onondaga County is contiguous to two counties in the Third Department and closer to Albany County than to parts of the Fourth Department. As the area generally known as upstate, the Third and Fourth Departments constitute a true unity of judicial interest. The fact that they are separate Departments is not a bar to this conclusion. (See, Deutsch v Crosson, supra.) Therefore plaintiffs’ salaries must be equalized to the level of Albany County Court Judges in order to satisfy equal protection.
In making this determination, I am aware that defendants Regan and State of New York have urged that the State’s current fiscal crisis be considered in determining whether plaintiffs are entitled to relief. While I sympathize with the State’s financial plight, I cannot find that an individual’s right to equal protection of the laws is vitiated by financial considerations.
However, plaintiffs’ own proof supplies an indication of a *168 rational basis for a differentiation between their salaries and those of County Court Judges in the Second Department counties. Quite simply, the cost of living is significantly higher in the Second Department counties. While plaintiff’s expert suggests that the higher cost of living is due solely to the cost of housing in the downstate counties and that this item is not significant to Judges who will ordinarily already have purchased houses, I cannot assume that the Legislature held the same opinion. As long as any state of facts exists which could conceivably supply a rational basis for a legislative determination, it cannot be invalidated under the Equal Protection Clause. (See, Maresca v Cuomo, supra.)[3]
Finally, plaintiffs must be denied relief on their claim that they should be paid equally to the Court of Claims Judge serving as an acting Supreme Court Justice. None of the precedents cited by plaintiffs supports the proposition that Judges having different jurisdictions and powers must be paid the same amount when assigned the same duties.
Plaintiffs are thus granted summary judgment on their first cause of action. Defendants are granted summary judgment on the sixth, tenth, thirteenth, and seventeenth causes of action. All other causes of action are moot in light of the dispositions arrived at herein. Back pay based on the salary of the Albany County Judges is ordered retroactive to October 1, 1978, or first date of judicial service if that service began after October 1, 1978. Since plaintiffs have prevailed on a claim cognizable under 42 USC § 1983, counsel fees will be addressed on an application therefor which will give defendants an opportunity to address any special circumstances precluding a grant.

. Onondaga County Court is in a somewhat anomalous position vis-á-vis the 13 comparator counties since a Court of Claims Judge has been assigned as an acting Supreme Court Justice and shares the criminal court load with the three plaintiffs. Plaintiffs provide statistics both assessing caseloads factoring in the Court of Claims Judge (i.e., dividing the total caseload by four) and not factoring him in. In this opinion, all figures quoted will be those arrived at by dividing the total caseload by four. It should also be noted that Judges in some of the smaller counties also act as either Surrogate or Family Court Judges; neither plaintiffs nor defendants have come forward with any proof as to how this dual role affects their caseloads. However, since the most relevant comparisons in this case are among the larger counties, the dual role in the smaller counties, is of limited importance.

. Defendants also assert loches as a defense, but in light of the recency of decisions granting relief in similar challenges, this cannot be construed as .. a serious defense. (See, for example, Davis v Rosenblatt, 159 AD2d 163, and Deutsch v Crosson, 171 AD2d 837, decided in 1990 and 1991, respectively.)

. I am aware that this may well not be the actual basis for the differentiation. The fact that there are large differentials in salary even among the high cost-of-living counties of the Second Department is a strong indication that cost-of-living is not the controlling factor. However, this is irrelevant (Maresca v Cuomo, 64 NY2d 242) or, at best, a matter for a different decision with different plaintiffs and a different court.