WILLARD W. CASS, JR., et al., Appellants, v STATE OF NEW YORK et al., Respondents. (Action No. 1.)

RAYMOND E. ALDRICH et al., Appellants, v STATE OF NEW YORK et al., Respondents. (Action No. 2.)

ARTHUR J. ABRAMS et al., Appellants, v STATE OF NEW YORK et al., Respondents. (Action No. 3.)

Third Department, August 5, 1982

APPEARANCES OF COUNSEL

*Paul A. Feigenbaum* for Herbert B. Evans, respondent.

*Robert Abrams, Attorney-General* (*Jeremiah Jochnowitz* and *William J. Kogan* of counsel), for Edward V. Regan and another, respondents.

*Gordon & Schechtman, P.C.* (*Murray A. Gordon* of counsel), for appellants.

OPINION OF THE COURT

*Per Curiam.*

Involved herein are cross appeals arising out of three declaratory judgment actions brought by 116 named plaintiffs, all of whom presently hold or in the past have held the position of Family, County and/or Surrogate's Court Judge. Defendants are the State of New York, the Chief Administrator of the Courts of the State of New York, Herbert B. Evans, and the Comptroller of the State of New York, Edward V. Regan. In their respective actions plaintiffs seek, *inter alia,* declarations that, pursuant to the Unified Court Budget Act (L 1976, ch 966; Judiciary Law, § 39) and subsequent related legislative enactments (L 1979, ch 55; Judiciary Law, art 7-B; L 1980, ch 881), they have been unconstitutionally deprived of higher salaries which were received by Judges of courts of co-ordinate jurisdiction performing similar duties in other areas of the State and declarations that they are entitled to receive retroactive salary increments from April 1, 1977, the date upon which salaries determined in accordance with the Unified Court Budget Act went into effect. Since the facts and matters at issue in the three actions are essentially identical, they were consolidated for purposes of argument and decision at Special Term and will be treated in similar fashion by this court.

Examining each of the three actions individually, we find that plaintiffs in Action No. 1 are or have been Surrogates residing in various counties across the State with their salaries varying from county to county. Concededly, the compensation paid these Surrogates for their judicial services has, at all material times since April 1,

1977, been less than the compensation paid to the Surrogates in Nassau, Suffolk and Westchester Counties and the counties in New York City, with the salary differential in some instances exceeding $12,000 per year.[1] With regard to plaintiffs in Action No. 2 and Action No. 3, they are or have been, respectively, County Court Judges and Family Court Judges from many different counties in the State who, since April 1, 1977, have been receiving annual salaries as much as $12,000 less than their counterparts in Nassau County,[2] and they, as do the Surrogates in Action No. 1, challenge the cited disparities in salaries and assert that the unequal compensation paid to Judges of courts of co-ordinate jurisdiction performing similar duties does not pass constitutional muster.

Special Term (109 Misc 2d 107), after granting summary judgment in favor of the Comptroller dismissing the complaints as against him, granted summary judgment to plaintiffs against the remaining defendants to the extent of declaring the Unified Court Budget Act (L 1976, ch 966; L 1979, ch 55; L 1980, ch 881) unconstitutional insofar as its provisions require that plaintiffs be paid lower salaries than other Judges of the same courts performing similar duties. The court based its ruling upon the ground that the subject statutory provisions violated the equal protection clauses of the Federal and State Constitutions, and it further declared that plaintiffs were entitled to retroactive salary increments from April 1, 1977 to correct the salary disparities which resulted from the enactment of the Unified Court Budget Act. The present cross appeals ensued.

1. For example, it is admitted that the salary paid to the Surrogate of Cattaraugus County, plaintiff Edward M. Horey, was $37,425; $40,045; $42,520; $45,496 and $48,000 for the periods commencing April 1, 1977; October 1, 1978; April 1, 1979; October 1, 1979 and October 1, 1980, respectively. For the same periods, the salaries of the Surrogates in Nassau, Suffolk and Westchester Counties and the Counties in New York City were, respectively: $48,998; $52,428; $52,428; $56,098 and $58,000.

2. For example, it is admitted that the salaries of the plaintiff County Court Judges from Jefferson and Delaware Counties were $36,000; $38,520; $42,520; $45,496 and $48,000 for the periods commencing April 1, 1977; October 1, 1978; April 1, 1979; October 1, 1979 and October 1, 1980, respectively. For the same periods, Judges of the Nassau County Court were paid $48,998; $52,428; $52,428; $56,098 and $58,000, respectively. Additionally, the salary of plaintiff Family Court Judge Gene Catena of Montgomery County was $36,000; $38,520; $42,520 and $45,496 for relevant pay periods, while the salaries of the Nassau County Family Court Judges were $48,998; $52,428; $52,428 and $56,098, respectively.

■ Prior to our reaching the merits of these actions, we initially find that the court erred on two procedural matters when it dismissed the complaints as against the Comptroller and refused to dismiss the complaints as against the State. Both the Comptroller and the Chief Administrator of the Courts are public officers charged by plaintiffs with making allegedly unconstitutional disbursements of State funds pursuant to the Unified Court Budget Act, and, such being the case, they are proper defendants in these declaratory judgment actions (State Finance Law, § 123-b). With regard to the State, however, no persuasive authority has been cited to demonstrate that it is a proper defendant in these actions. It has long been well settled that the State is immune from any suit except where it has specifically consented thereto by express constitutional or legislative enactment (see *Psaty v Duryea,* 306 NY 413). Accordingly, the complaints as against the State should be dismissed, a result of little practical consequence since the two State officers remain as parties defendant, and any recoveries of money damages by plaintiffs as a result of rights declared herein must necessarily await separate actions against the State in the Court of Claims (see *Matter of Adams v New York State Civ. Serv. Comm.,* 51 AD2d 668).

■ Turning now to the substantive issues presented, we cannot agree with the conclusion of Special Term that plaintiffs' rights under the equal protection clauses of the Federal and State Constitutions were violated by the determination and payment of plaintiffs' salaries in accordance with the provisions of the Unified Court Budget Act. Although plaintiffs have shown some inequalities in the salary classifications of Family, County and Surrogate Judges across the State, it must be remembered that such classifications need not be mathematically exact or perfect (*Montgomery v Daniels,* 38 NY2d 41) and that legislation can withstand an equal protection challenge "if any state of facts reasonably may be conceived to justify it" (*McGowan v Maryland,* 366 US 420, 426). In the present instance, even the report of the Chief Administrator of the Courts to the Legislature, upon which Special Term relies in its decision, concedes that "statistics indicate a degree of

correlation between population, caseload and compensation" received by the various Judges, and there are obviously other variables, such as disparities in the cost of living across the State, which might conceivably provide justification for the differences in judicial salaries. Significantly, the United States Supreme Court has affirmed a holding in *Kavanagh v Brown* (206 F Supp 479, affd 371 US 35) to the effect that there is no denial of equal protection where members of the same court are paid disparate salaries. In short, it does not appear from this record that a salary classification based upon population, caseload or cost of living impedes the governmental objective of creating a unified court system (*Matter of Abrams v Bronstein,* 33 NY2d 488, 492).

In reaching this conclusion, we are not unmindful of the Court of Appeals recent ruling in *Weissman v Evans* (56 NY2d 458), but nonetheless conclude that that decision is readily distinguishable from the situation presented here. Although the court held in *Weissman* that District Court Judges in Suffolk County were denied their constitutional right to the equal protection of the laws as a result of the disparity between their salaries and the salaries of District Court Judges in Nassau County, it limited its ruling by stating (p 464) that "in this case at least" the historical basis for the differential in salaries was insufficient to justify the lower compensation for Suffolk County District Court Judges. Moreover, contrary to the situation presented in the instant actions, it was uncontested in *Weissman* (p 463) that Suffolk and Nassau Counties constitute a " 'true unity of * * * judicial interest * * * indistinguishable by separate geographic considerations' " and that the "jurisdiction, practice and procedures of each of the District Courts and the functions, duties and responsibilities of their Judges are identical" with their caseloads substantially the same (*supra,* p 463). In contrast, plaintiffs in the present actions serve all across the State in widely scattered and diverse areas with varying judicial demands and requirements and without a " 'true unity of * * * judicial interest' ", and they must contend with the different life-styles, concentrations of population and disparities in living costs presented in these various locations. Addition-

ally, it is likewise significant, as noted above, that the Chief Administrator of the Courts found in his report to the Legislature some degree of correlation between population, caseload and the compensation received by the Family, County and Surrogate Judges across the State. Accordingly, it is our judgment that the situation of plaintiffs in this instance is strikingly different from that of the plaintiffs in *Weissman* with the result that the holding in *Weissman* is not controlling here.

Plaintiffs' further contention that section 25 (subd a) of article VI of the New York State Constitution mandates that the Legislature treat each specific type of Judge enumerated therein generically so that all persons serving as a specific type Judge receive the same salary is similarly unpersuasive. That section provides, in pertinent part, as follows: "The compensation of a judge of the court of appeals, a justice of the supreme court, a judge of the court of claims, a judge of the county court, a judge of the surrogate's court, a judge of the family court, a judge of a court for the city of New York established pursuant to section fifteen of this article, a judge of the district court or of a retired judge or justice shall be established by law and shall not be diminished during the term of office for which he was elected or appointed." Although it might well be argued, as a matter of public policy, that all persons serving as a specific type Judge should receive the same pay and that such a compensation schedule would not be prohibited by the cited constitutional provision, it is likewise clear that neither the generalized language of the provision nor the treasured independence of the judiciary mandates such a salary structure, and in fact plaintiffs can point to no constitutional or statutory provision which expressly requires a standard salary for each specific type Judge. Significantly, the Court of Appeals has previously construed the predecessor to section 25, former section 19 of article VI of the State Constitution which authorized the Legislature to establish the salaries for all Judges, Justices and Surrogates, as permitting different compensation for persons serving in the same judicial office in different locations across the State (*County of Broome v Bates,* 197 Misc 88, affd 302 NY 587). Considering these circum-

stances together with the very strong presumption that a legislative enactment is constitutional (see *Hotel Dorset Co. v Trust for Cultural Resources of City of N. Y.,* 46 NY2d 358; *Matter of Taylor v Sise,* 33 NY2d 357), we conclude that the challenged provisions of the Unified Court Budget Act are constitutionally permissible and not violative of section 25 (subd a) of article VI of the State Constitution.

We need reach no other issue.

The judgments in each action should be reversed, on the law, without costs; the complaints dismissed as against defendant State of New York and judgments directed to be entered declaring that the Unified Court Budget Act is not violative of the Federal or State Constitution insofar as plaintiffs are provided lower salaries than granted to other Judges performing similar duties.

SWEENEY, J. P., MAIN, MIKOLL, YESAWICH, JR., and WEISS, JJ., concur.

Judgments in each action reversed, on the law, without costs; complaints dismissed as against defendant State of New York and judgments directed to be entered declaring that the Unified Court Budget Act is not violative of the Federal or State Constitution insofar as plaintiffs are provided lower salaries than granted to other Judges performing similar duties.