Fuchsberg,
J. (dissenting). Though no two cases are
exactly alike, one would have expected that this one would be treated as a sequel to Weissman v Evans (56 NY2d 458), in which, only some months ago, we found that the continuance of a salary disparity between Judges of the same rank in different counties of this State left us “no choice but to declare it offensive” to the constitutionally protected right to equal protection of the law (id., at p 466). I see no essential difference between that case and this one.
True it is that, in Weissman, some of the Judges served courts in one county and the others in an adjoining one, while here some of the secretaries serve State Judges in New York City while others serve State Judges of equal rank in non-New York City areas.
But, though it is undisputed that the services rendered by law secretaries in New York City are no less demanding than those performed by their counterparts outside of New York City, under our Unified Court System (NY Const, art VI, § 1, subd a), and though both now are State employees, *11 a secretary to a State Supreme Court Justice in New York City receives considerably less in salary than does a secretary of equal training, experience and tenure attached to a Justice of the same court in another part of the State. Moreover, under a salary scheme which provides a lockstep progression through varied increment levels, the salary discrepancy will continue until a so-called “extra longevity step” is reached some 10 or 15 years later, which for many of the secretaries means the balance of their professional lifetimes. (See Judiciary Law, § 39, subd 8, par [b].) It is to challenge this condition that these proceedings were brought by the Association of Secretaries to Justices of the Supreme and Surrogate’s Courts of the City of New York and its members.
The problem has its genesis in the Unified Court Budget Act of 1976 (L 1976, ch 966), legislation designed, among other things, to eliminate precisely the kind of disparities at issue here. Prior to unification, the petitioners, though employed by State-paid Justices, were carried on the payroll of local governments, while those performing identical duties in the remainder of the State, were paid by that branch of government. The act, in harmony with the plan of the newly formed court unification system (see Weiss - man v Evans, supra, at pp 462-463) and the State’s longstanding policy “to provide equal pay for equal work” (Civil Service Law, § 115), was expected to eliminate such distinctions by merging all these employees into a single personnel structure. Instead, however, as applied, the statute froze most New York City law secretaries into their inferior salary status and, to boot, perpetuated these preexisting disparities by using the payrolls of the local governments to which they once were charged as a base for fixing their future earnings. This arrangement, as applied to petitioners, creates distinctions, which, lacking a rational basis, deny them equal protection (NY Const, art I, § 11; US Const, 14th Amdt, § 1).
Respondents have sought to justify this discrimination essentially on four grounds, one historical, the second geographical and the last two fiscal.
The historical one hardly need detain us. We made clear in Weissman that, so far as the State court system is *12 concerned, “however intrenched the local influence at one time may have been”, it lost its viability when court unification finally arrived (Weissman v Evans, supra, at p 464).
As to the geographical excuse respondents offer, we observed that “while equal protection does not necessarily require territorial uniformity * * * ‘[a] territorial distinction which has no rational basis will not support a state statute’ ” (Weissman v Evans, supra, at pp 464-465, quoting from Manes v Goldin, 400 F Supp 23, 29 [three-Judge court], affd 423 US 1068 [citations omitted]). Ironically, since the respondents have not disputed the fact that, if anything, the greater complexity and volume of litigation pending in the courts of the City of New York render petitioners’ tasks more onerous, discrimination in favor of, rather than against them, would appear to be the only kind that could be in order.
Moreover, analysis of the cases cited by the majority emphasizes the point. For the distinction upheld in each was one peculiarly and unmistakably related to the area singled out (McGowan v Maryland, 366 US 420 [upholding statutory exemption from Sunday closing laws for retailers selling merchandise in resort area]; Salsburg v Maryland, 346 US 545 [pre-Mapp v Ohio (367 US 643) case, permitting State to use illegally obtained evidence in one highly urbanized part of Maryland where there was an unusually high incidence of gambling]; Walsh v Commonwealth of Mass., 618 F2d 156 [upholding the payment of higher salaries to court officers in Boston solely because of the especially onerous duties of court officers in that city]; Matter of Colt Inds. v Finance Administrator of City of N. Y., 54 NY2d 533; 544-545 [upholding legislation restricting admissibility of State equalization rates in New York City and Nassau County solely because of the “high density of population and diversity of property” in those areas]).
Of the majority’s two fiscal thrusts, one is that, by keeping petitioners’ wages in tow, “reasonable control” of “the cost of unification” might be achieved. This, I respectfully venture, is most outlandish. The issue here is not whether the Legislature had the right to save money when *13 it embarked on the court unification plan. Rather, it is whether the State could enact a statute which imposes a disproportionate share of the costs of its scheme on one class of persons. Certainly, respondents would not contend that the Legislature could constitutionally justify a decision to give red-haired law secretaries lower salaries than all others simply by claiming that it did not have enough money to pay all law secretaries equal salaries. For identical reasons, the State cannot use that justification to support its discriminatory treatment of petitioners, who were classified on a similarly arbitrary basis, i.e., the identity of the government unit that paid their salaries prior to April 1, 1977. In short, “fiscal constraints” alone cannot justify disparate treatment of equals.
Allocatable to the fiscal category too, I suppose, is the majority’s supposition that the Legislature in fact had equalized law secretarial wages by charging the New York City contingent with its fringe benefits, such as they were. To this there are several short answers. To take three: 1. Overall, as respondents themselves agreed and as Special Term concluded, substantial and material disparities in salaries unfavorable to prior city-paid secretaries do exist. 2. Special Term expressly found that “fringe benefits do not constitute ‘salary’ within the purview of Judiciary Law section 39 (6) (c) and cannot be added into the equation for the purpose of determining comparability of salary”. 3. There is just no proof of any such legislative calculation or intention.
For all these reasons, I vote to reverse the order of the Appellate Division and to grant judgment to the petitioners declaring section 39 (subd 8, par [b]) of the Judiciary Law unconstitutional.
Judges Jones, Wachtler and Meyer concur with Judge Jasen; Judge Fuchsberg dissents and votes to reverse in a separate opinion in which Judge Gabrielli concurs; Chief Judge Cooke taking no part.
Order affirmed, with costs.