[989 NYS2d 840]

Susan Larabee et al., Appellants, v Governor of the State of
New York et al., Respondents.

First Department, July 10, 2014

### APPEARANCES OF COUNSEL

*Cohen & Gresser LLP*, New York City (*Tom E. Bezanson, Alexandra Wald* and *Matthew V. Povolny* of counsel), and *George Bundy Smith & Associates, P.C.*, New York City (*George Bundy Smith, Sr.* of counsel), for appellants.

*Eric T. Schneiderman, Attorney General*, New York City (*Mark H. Shawhan* and *Richard Dearing* of counsel), for respondents.

*Stroock & Stroock & Lavan LLP*, New York City (*Joseph L. Forstadt, Alan M. Klinger, Ernst H. Rosenberger, Burton N. Lip-*

*shie, Jerry H. Goldfeder* and *Linda M. Melendres* of counsel), for amici curiae.

### OPINION OF THE COURT

The order of the Supreme Court, New York County (Richard F. Braun, J.), entered September 14, 2012, which, upon renewal of plaintiffs' motion for summary judgment, declined to award plaintiffs retroactive monetary damages, should be affirmed, without costs.

TOM, J.P. (concurring). I agree with the concurrence that defendants have not violated the ruling of the Court of Appeals in the consolidated appeals addressed in *Matter of Maron v Silver* (14 NY3d 230 [2010]), although I write to address additional concerns.

The background facts are set forth in the writings of the concurrence and the dissent and, in greater detail, in this Court's prior decision in *Larabee v Governor of State of N.Y.* (65 AD3d 74 [1st Dept 2009]) and the Court of Appeals ruling (14 NY3d at 230). For present purposes, plaintiffs contend, in effect, that the Court of Appeals decision, having found that New York State judges' compensation lagged considerably in recent years, and also that the legislature acted unconstitutionally in how it responded to the growing inadequacy of judicial salaries, implied a basis for complete recovery retroactive to when the legislature initially failed to establish adequate salaries. Plaintiffs seek, in the present actions, an order awarding them as money damages such compensation as they would have received had cost of living increases been imposed for them dating back to January 1, 2000. However, since plaintiffs' reading of the Court of Appeals decision is inconsistent with the actual text, and I conclude that the remedy they seek is not achievable, I would affirm Supreme Court's order dismissing plaintiffs' claims.

There is no lingering question whether the legislature acted properly during the time period when judges' salary remained stagnant for years—it did not—nor was there any serious controversy regarding the merits of an increase in judicial compensation. Now that the legislature has acted, the issue presented is whether the pay increases that were authorized were themselves constitutionally deficient. However, plaintiffs are conflating an understandable lack of satisfaction with the financial outcome with an analysis more properly relegated to the constitutionality of the process. Relatedly, we are constrained by the text of the Court of Appeals decision, in *Maron*, which analyzed the prior process in terms of the conflict between the

legislature's constitutional prerogatives, and its budgetary policies that are outside the purview of those boundaries.

In *Maron*, the Court of Appeals, although leaving intact this Court's declaration and its underlying analysis in *Larabee v Governor of State of N.Y.* (65 AD3d 74 [1st Dept 2009], *supra*) that the political linkage which the legislature substituted for an objective consideration of the merits of judicial compensation violated the constitutional Doctrine of Separation of Powers, nevertheless modified our decision to the extent of eliminating the remedy wherein this Court directed the legislature to adjust judicial compensation *to reflect the increase in the cost of living since 1998* (*id.* at 100). It would appear that the modification of this Court's attempt to devise a particular monetary remedy, retroactively tied to the cost of living, which plaintiffs similarly seek herein, was already rejected by the Court of Appeals.

Although the Court of Appeals discussed the omission of cost of living increases for judicial compensation, it did so in a purely descriptive, rather than prescriptive, context, and the introductory passages in the decision specifically rejected the recent history of inflation as a constitutionally compelling factor. Thus, there is no textual predicate for us to measure any remedy by such a specific economic factor. Therefore, to the extent that the dissent's suggested remand contemplates the employment of cost of living adjustments (COLA), or inflation, as components of what should be adequate compensation, it appears to be inconsistent with the Court of Appeals decision.

To the contrary, in its discussion of *Larabee*, the Court of Appeals articulated a concern that courts not intrude into the primary domain of the legislature—that of devising budgets and establishing judicial compensation—when fashioning specific remedies for the legislature's constitutional violations. The Court of Appeals underscored the constitutional delicacy of the judiciary intervening in the legislature's budgetary function, including that of evaluating the merits of particular compensation levels for judges, which should be undertaken only under the "narrowest of instances" (*Matter of Maron*, 14 NY3d at 261 [internal quotation marks omitted]). Although no further elaboration was provided as to which circumstances might warrant judicial intrusion into these core legislative functions, I do not find any basis for courts to fill that gap as the dissent proposes. The Court of Appeals offered as an extreme example the constitutional violation that would gradually arise were judicial salaries to be constricted to a century-old pay scale; that

the example utilized was extreme suggests, I think, that the scope for judicial intervention is narrow indeed.

Limiting itself to finding that the chronic postponement after 2000 of a merit-based evaluation for judicial salary increases while unrelated political tactical considerations were advanced by the legislature was itself the constitutional violation, the Court of Appeals found that "we do not believe that it is necessary here to order specific injunctive relief" (*id.* at 261). Yet, directing the legislature to appropriate funds for retroactive compensation seems to be innately injunctive, notwithstanding that plaintiffs and the dissent frame the remedy as one for money damages.

In any event, the decision seemed to carefully circumvent the question whether a judicial pay increase was required, finding, rather, that the legislative process that avoided such a determination was constitutionally flawed. Hence, the Court of Appeals' decision was clear as to what the legislature must not do, but was equivocal as to what it then must do.

The remedy devised by the Court of Appeals was the declaration itself; the subsequent phrasing, "we presume that the State will act accordingly" (*Maron* at 261), set forth no specific directive. The further phrasing that "[w]e anticipate that our holding today will permit them to consider, in good faith, judicial salary increases on the merits" (*id.* at 262), was itself, also, aspirational rather than directive. Although the holding referenced "the remedy discussed in this opinion" (*id.* at 264), that remedy was declarative, and not injunctive, nor can I find any language in the decision to support an award of money damages. Although reserving to itself the right to determine "whether the [l]egislature has met its constitutional obligations in th[is] regard" (*id.* at 263), that general jurisdictional statement should yield to the specific finding, in the same paragraph, that "[o]f course, whether judicial compensation should be adjusted, and by how much, is within the province of the [l]egislature" (*id.* at 263). This latter constitutional self-restraint by the Court of Appeals flows from its recognition in the *Chief Judge of State of N.Y. v Governor of the State of N.Y.* (65 AD3d 898 [1st Dept 2009]) branch of the holding that the adequacy of judicial salaries, considered apart from why a merit-based evaluation was so long delayed, "is best addressed in the first instance by the [l]egislature" (*id.* at 262), which is "in a far better position than the [j]udiciary to determine funding needs throughout the state and priorities for the allocation of the State's resources"

(*id.* at 261, quoting *Campaign for Fiscal Equity, Inc. v State of New York*, 8 NY3d 14, 29 [2006]).

Thus, I cannot read the consolidated Court of Appeals decision as directing the legislature to fund judicial compensation, retroactive or otherwise, at a specific level. Yet the dissent, in suggesting a remand, presently seems to countenance imposing retroactive money damages on the legislature correlating with what a court would decide should have been the correct salary levels dating back to 2000. As I noted above, the Court of Appeals ruling is declaratory—that the linkage as employed was unconstitutional—rather than remedial in the sense of directing that a particular methodology be utilized to calculate *damages* dating back to 2000. Implicit in the Court of Appeals ruling was that, if the defective device of linkage was not employed, the legislature enjoyed its historic prerogatives of adjusting judicial compensation levels, should it find an increase to be warranted and if so, by how much, and then budgeting for the same. This is what the legislature, abandoning linkage, has now done.

The logic of the dissent's suggested relief presents an additional problem. If Supreme Court, on remand, exercises the power to order a retroactive recovery, measured by cost of living increases dating to any particular year, that would necessarily imply that the judiciary enjoys the power to establish judicial pay scales in the first place, using COLAs as a yardstick. The legislature, not the judiciary, has that power. The legislature is only barred from abusing that power by tying judicial compensation to unrelated, essentially political, considerations, including the legislature's attempt to wrest from the Governor his acquiescence in increasing legislators' compensation. That the legislature may act parsimoniously or even unwisely in how it discharges its budgetary responsibility towards judges, however, does not, itself, have constitutional ramifications.

In the final analysis, however, the viability of the remedy which plaintiffs seek is solely governed by the existing Court of Appeals ruling. The decision did not directly define the outer boundaries of judicial power should the legislature not provide for retroactive compensation, but seemingly left the nature and extent of compensation with the legislature. Thus, I do not find that the legislature, having abandoned its constitutionally offensive policy of linkage when recently increasing judicial salaries, has constitutionally offended by acting only prospectively, nor do I see a basis to conclude that the directives of the Court of Appeals were transgressed.

SWEENY, J. (concurring). The case involves litigation concerning the appropriate compensation to be paid to members of the New York State Judiciary. Plaintiffs contend that the creation of an independent commission on judicial compensation meeting every four years to recommend judicial compensation only prospectively does not remedy the constitutional violation found by the Court of Appeals in *Matter of Maron v Silver* (14 NY3d 230 [2010]) because the legislation failed to give the commission the authority to consider and award retroactive pay increases. Plaintiffs seek damages in the form of retroactive compensation and ask us to reverse the motion court's determination that declined to order the aforesaid monetary damages. For the reasons stated herein, we now affirm the motion court's order.

The Court of Appeals in *Maron* declared that the legislature had violated the Separation of Powers Doctrine by failing to consider judicial salaries "on the merits" (14 NY3d at 264), i.e., free from political or other considerations. The Court directed the legislature to address this transgression and reserved to the judiciary the right to review "whether the [l]egislature has met its constitutional obligations" (*id.* at 263). Importantly, the Court unequivocally held that, since the issue involves appropriations and funding, matters constitutionally within the purview of the legislature, that branch of government must fashion the appropriate remedy. We now apply that holding to this case.

The starting point for our analysis must be the clear language of the Court in *Maron*. The petitioners in *Maron* and the other consolidated cases, some of whom are the same plaintiffs here, brought hybrid CPLR article 78/declaratory judgment actions against various state officials and the state legislature. The article 78 proceeding was brought, inter alia, to compel the State Comptroller to disburse all the budgeted raises and retroactive pay amounts allocated, but not disbursed, in the 2006-2007 state budget for the judiciary. This proceeding was dismissed by Supreme Court, and affirmed by the Appellate Division, Third Department (58 AD3d 102 [3d Dept 2008]). In affirming the dismissal, the Court of Appeals specifically made reference to the fact that the appropriation for judicial compensation, including retroactive pay, was "explicitly made contingent upon the adoption of additional legislation" (14 NY3d at 249) and thus, the cause of action seeking mandamus against the Comptroller was properly dismissed. However, the linking of these pay raises to political considerations was revisited in the Court's discussion of the Separation of Powers Doctrine.

The declaratory judgment action alleged various constitutional violations by the legislature and state officials, including the Compensation Clause of the New York State Constitution (NY Const, art VI, § 25 [a]), equal protection and Separation of Powers Doctrine.

The equal protection argument was quickly dispatched, the Court affirming the dismissal for the reasons set forth in the Appellate Division decision (14 NY3d at 250).

The alleged Compensation Clause violation drew more attention. The plaintiffs argued that inflation and rises in the costs of living had unconstitutionally diminished judicial salaries. While recognizing that in an "extreme" case, legislative failure to address judicial salaries over a prolonged period of time might cause salaries to fall below a constitutionally permissible floor, the Court rejected the plaintiffs' arguments. Finding no support in the legislative history of the clause's enactment or subsequent amendments for the "broad interpretation embracing indirect diminishment by neglect," the Court held that "there is no evidence that the State Compensation Clause's 'no diminishment' rule was intended to affirmatively require that judicial salaries be adjusted to keep pace with the cost of living" (*Maron*, 14 NY3d at 252). Hence, "the [l]egislature's failure to address the effects of inflation in this case does not equate to a per se violation of the Compensation Clause" (*Maron*, 14 NY3d at 254).

The Court found merit to the plaintiffs' argument that, by linking judicial compensation to unrelated legislative objectives and considerations, as opposed to considering this issue on its own merits, the legislature had disregarded the Separation of Powers Doctrine and thus threatened the independence of the judiciary. The court concluded that by holding judicial compensation considerations "hostage to other legislative objectives" the legislature made the judiciary "unduly dependent" on it and thus violated the Doctrine of the Separation of Powers (*Maron*, 14 NY3d at 259 [internal quotation marks omitted]).

Having reached that conclusion, the Court turned its attention to the remedy for this constitutional violation. Showing the proper regard for the Separation of Powers Doctrine, the Court held:

> "[W]hen 'fashioning specific remedies for constitutional violations, we must avoid intrusion on the primary domain of another branch of government' (*Campaign for Fiscal Equity, Inc. v State of New York*, 8 NY3d 14, 28 [2006]). Indeed, deference to the Legislature—which possesses the constitutional

authority to budget and appropriate—is necessary because it is 'in a far better position than the [j]udiciary to determine funding needs throughout the state and priorities for the allocation of the State's resources' (*id.* at 29)" (*Maron*, 14 NY3d at 261).

The Court declined to order specific relief, stating that "whether judicial compensation should be adjusted, and by how much, is within the province of the [l]egislature" (*Maron*, 14 NY3d at 263).

In response to *Maron*, the legislature and Governor David Paterson established the Commission on Judicial Compensation (L 2010, ch 567). Meeting every four years, the Commission is tasked to make recommendations for future salary adjustments which are to take effect unless specifically rejected by the legislature. In August 2011, the Commission recommended a 27% increase in judicial salaries, phased in over three years commencing in 2012.

Plaintiffs here argue they are entitled to damages for defendants' past constitutional violations because the Commission established by the legislature was not empowered to consider retroactive pay increases and cost of living adjustments that they should have received after January 1, 2000. The dissent agrees that the legislature's creation of a commission empowered to address judicial compensation prospectively did not fulfill its constitutional mandate, since it failed to address the issue of retroactive pay increases. By arguing for the imposition of "damages" against the legislature in the form of retroactive compensation in an unspecified amount to be determined by future proceedings, the dissent purports to substitute its own remedy for that of the legislature, thus ignoring the holding in *Maron* and, in turn, infringing the very doctrine it seeks to vindicate. By finding the legislature's remedy inadequate, the dissent would expand *Maron* beyond its holding and trespasses upon the constitutional functions of the legislative and executive branches.

Initially, it is a questionable proposition that "damages" can be awarded against a coequal branch of government. My colleague's observation that "it is individual judges[,] [not the judicial branch of government] who are seeking damages" is a distinction without a difference. By the very nature of their offices, judges are part of the judicial branch. Moreover, this decision will, of course, impact all present and former judges. Indeed, as the dissent notes, "Without a monetary award for

past violations, the more than 600 judges and justices who retired between 2006 and April 1, 2012, including Hon. Arlene Silverman, plaintiff in *Silverman v Silver* (119 AD3d 449 [1st Dept 2014] [decided simultaneously herewith]) will not obtain any redress whatsoever for the violation of their constitutional rights." The present lawsuit therefore presents the untenable situation of one branch of government seeking damages from a coordinate branch.

By accepting plaintiffs' argument and remanding for further proceedings to determine the amount of damages to be awarded in the form of back pay, we would be effectively arrogating the budgeting power to the judiciary under the guise of remedying a constitutional violation. It would impermissibly direct the legislature, the branch charged with the responsibility of budgeting funds for the entire state, to appropriate an unspecified amount, pursuant to a formula to be determined, for an unknown number of persons. Such a decision would clearly violate the Separation of Powers Doctrine.

There is no provision in the Constitution or statute that enables a court to impose on the legislature any dollar figure, no matter how calculated, since the judiciary, as a coequal branch of government, simply cannot constitutionally tell the legislature to appropriate or pay any amount of money for any specific purpose. The Court of Appeals certainly recognized this when it directed that judicial salaries are to be determined only on the merits and left to the legislature how to remedy its past improper practices. There was no mention of "damages" in *Maron*, present or retroactive. Rather, the Court expressed its confidence in the state's tripartite system of government by stating: "When this Court articulates the constitutional standards governing state action, we presume that the State will act accordingly" (*Maron*, 14 NY3d at 261). Indeed, in its discussion concerning retroactive pay and cost of living increases with respect to the Compensation Clause, the Court inherently recognized that any mandate to pay those sums would encroach upon the budgeting powers of the legislature and thus would violate the Separation of Powers Doctrine.

The Court of Appeals merely held that the legislature could not tie salaries to political considerations. When the legislature established the Commission, it was under no obligation to address, or give the Commission the power to address, retroactive pay and cost of living increases. To find, as the dissent urges, that this omission constitutes a constitutional violation giving

rise to "damages" is unwarranted. This is particularly so in light of the Court's conclusion that *"whether* judicial compensation should be adjusted, and by how much, is within the province of the [l]egislature" (*Maron,* 14 NY3d at 263 [emphasis added]). There was no direction, or even an implication, that, in order to remedy the constitutional violation, the legislature had to fashion a retroactive remedy. The Court did not indicate that to correct the past violations there *must* be a pay increase, let alone a retroactive one.

This is not a proceeding where the courts are asked to remedy a constitutional violation by a government *agency,* as in the precedents cited by the dissent. Each of those cases involve pay disparities within trial level courts that were created by policy decisions made by the Office of Court Administration, the *agency* responsible for administrating the courts. The funds involved in those disputes had already been appropriated to the judiciary by the legislature and were part of that year's judicial budget. It was well within the court's domain to address the bases of those disparities and direct certain relief, including retroactive pay adjustments. That is not the case here. By awarding "damages" against a coordinate branch of government in the form of retroactive compensation in an amount to be determined by future proceedings, the dissent would create a situation where the judiciary encroaches on the powers constitutionally placed within the legislature.

> "It must be remembered that the Separation of Powers Doctrine 'is a *structural safeguard* rather than a remedy to be applied only when specific harm, or risk of specific harm, can be identified. . . . [I]t is a prophylactic device, establishing high walls and clear distinctions because low walls and vague distinctions will not be judicially defensible in the heat of interbranch conflict' " (*Maron,* 14 NY3d at 260-261, quoting *Plaut v Spendthrift Farm, Inc.,* 514 US 211, 239 [1995]).

For us to hold otherwise would blur the lines of this doctrine.

The dissent's reliance on *Beer v United States* (696 F3d 1174 [Fed Cir 2012], *cert denied* 569 US —, 133 S Ct 1997 [2013]) to support its position regarding retroactive pay increases is misplaced. While superficially similar to this case, the factual and constitutional issues in *Beer* are quite different.

Beer concerned the provisions of the Ethics Reform Act of 1989 (Pub L 101-194, 103 US Stat 1716 [101st Cong, 1st Sess,

Nov. 30, 1989]) (1989 Act) and its subsequent amendments. The purpose of the 1989 Act was to revise compensation and ethics rules for all three branches of the federal government.

> "With respect to the judiciary, it contained two reciprocal provisions. On the one hand, the 1989 Act limited a federal judge's ability to earn outside income and restricted the receipt of honoraria. On the other hand, the 1989 Act provided for self-executing and non-discretionary cost of living adjustments ("COLA") to protect and maintain a judge's real salary" (*Beer* at 1177).

The 1989 Act provided that whenever COLA for general schedule federal employees takes effect, the salary of judges "shall be adjusted" pursuant to a set formula set out in the statute (Pub L 101-194, tit VII, § 705 [a] [1] [C], 103 US Stat 1716, 1770 [101st Cong, 1st Sess, Nov. 30, 1989]). Those adjustments are mandatory. The only limitation on general schedule COLAs is a formal declaration by the President of a "national emergency or serious economic conditions affecting the general welfare," which would make pay adjustments "inappropriate" (*Beer* at 1177, quoting 5 USC § 5303 [b]). When Congress blocked COLA adjustments for federal judges in certain years where general schedule federal employees received such adjustments, the judges sued as a class, alleging a violation of the Compensation Clause of the Constitution. The Court of Federal Claims dismissed the complaint.

The Federal Circuit Court reversed, agreeing with the plaintiffs that the withholding of the adjustments was a violation of the Compensation Clause. The court reasoned that "the 1989 Act reduced judges' income by banning outside income but promised in exchange automatic maintenance of compensation—a classic legislative *quid pro quo*," which gave judges "an employment expectation at a certain salary level" (*Beer* at 1182 [internal quotation marks omitted]). The judges were entitled to receive those adjustments because they were mandated by statute, a statute which Congress was free to prospectively amend or repeal but not ignore. The court observed that, while "the Compensation Clause does not require periodic increases in judicial salaries to offset inflation or any other economic forces," where, as here, "Congress promised protection against diminishment in real pay in a definite manner and prohibited judges from earning outside income and honoraria to supplement their compensation, that Act triggered the expectation-

related protections of the Compensation Clause for all sitting judges" (*id.* at 1184-1185). It awarded the claimants back pay for the periods in which Congress unconstitutionally blocked pay increments as mandated by the 1989 Act and subsequent amendments thereto, to be computed by the formula set forth in that legislation.

*Beer* is therefore distinguishable on a number of grounds. First, its constitutional underpinning falls under the Compensation Clause. The Compensation Clause argument was specifically rejected by the Court of Appeals in *Maron*, which, as noted, was decided under the Separation of Powers Doctrine.

Most importantly, it bears repeating that the article 78 proceeding to compel state officials to implement the 2006 pay increase legislation which had been held hostage to political considerations was dismissed by the Third Department and that dismissal was affirmed in *Maron* as it was a *contingent* pay increase, i.e., it required further action by the other branches in order to be implemented. The issue of retroactivity of any pay increase was thus before the Court, which, by its silence, declined to address the issue. By contrast, *Beer* involved a statute passed by Congress and signed into law by the President which *mandated* judicial pay adjustments without any further legislation or action by either Congress or the executive. Indeed, the 1989 Act "set a clear formula for calculation and implementation of those maintaining adjustments. Thus, all sitting federal judges are entitled to expect that their real salary will not diminish due to inflation or the action or inaction of the other branches of Government" (*Beer* at 1184). Congress' action in blocking those mandated pay adjustments was found to contravene the Compensation Clause because the "Act triggered the expectation-related protections of the Compensation Clause for all sitting judges" (*id.* at 1185). A later Congress, while "not precluded from amending the 1989 Act" prospectively, "could not renege on that commitment without diminishing judicial compensation" (*id.* at 1185). The failure to implement the automatic pay adjustment required a remand to the Court of Federal Claims to calculate the pay to which the claimants were entitled under the statute.

In the case before us, no such mandatory legislation has been violated. There are no "expectation-related protections" regarding retroactive salary increases to which active and former judges can claim entitlement, as the Court of Appeals declined to order specific relief in connection with the violation of the

Separation of Powers Doctrine. For us to now order such specific relief, by finding that the legislature failed to consider retroactive pay increases, would not pass constitutional muster as it would breach the "high walls and clear distinctions" necessary to maintain the Separation of Powers Doctrine (*Maron*, 14 NY3d at 260 [internal quotation marks omitted]).

FREEDMAN, J. (dissenting). I respectfully dissent because I believe that the past constitutional violations identified by the Court of Appeals in *Matter of Maron v Silver* (14 NY3d 230 [2010]) warrant retroactive monetary damages. Accordingly, I would reverse the order of Supreme Court and remand this action for a determination of appropriate compensation.

In *Maron*, the Court of Appeals held that the legislature's failure to increase the compensation for judges and justices of the Unified Court System for more than 10 years jeopardized the judiciary's independence and thereby violated the Separation of Powers Doctrine underlying our tripartite system of government (*see generally Under 21, Catholic Home Bur. for Dependent Children v City of New York*, 65 NY2d 344, 355-356 [1985]). The Court of Appeals directed the violation to be addressed with "appropriate and expeditious legislative consideration," and reserved to the judiciary the authority to review "whether the Legislature has met its constitutional obligations" (*Maron*, 14 NY3d at 263). Since *Maron* was decided, an independent body, the Commission on Judicial Compensation, was established to recommend judicial salary adjustments and New York State judges and justices have received a three-tier compensation increase beginning in April 2012, more than 13 years after the last increase.

The questions now before this Court are whether the legislature satisfied its constitutional obligations by creating the Commission, which was authorized to recommend future increases starting almost three years after *Maron* but no retroactive compensation, and whether the judges aggrieved by defendants' past constitutional violation are entitled to compensatory monetary damages. In my opinion, the legislature failed to fully comply with the directives in *Maron* that found a constitutional violation and that past and current members of the judiciary are entitled to monetary damages as the only available remedy for the past violation.

The Court of Appeals and this Court have set forth the relevant facts of this case in detail in *Maron* (14 NY3d at 244-246) and *Larabee v Governor of State of N.Y.* (65 AD3d 74, 77-79 [1st

Dept 2009]). Briefly, plaintiffs in this action are four members of the judiciary who in September 2007 brought suit against the executive and legislative branches because plaintiffs and their fellow justices and judges had not received even a cost of living increase since January 1, 1999. Plaintiffs originally advanced two principal claims. First, they alleged that defendants' failure to increase judicial salaries for more than eight years violated the State Compensation Clause (NY Const, art VI, § 25 [a]) because defendants allowed inflation to erode the value of those salaries.

Second, plaintiffs claimed that defendants' failure to increase judicial compensation violated the Separation of Powers Doctrine. In support of their separation of powers claim, plaintiffs demonstrated that, since 1999, a number of bills to raise judicial compensation had been proposed to the legislature or passed by one legislative chamber but were not enacted because the proposed increases were linked by political considerations to unrelated objectives that the legislature or the Governor advanced, including legislative raises and measures for campaign finance reform (*see Maron*, 14 NY3d at 245). Plaintiffs sought both injunctive and declaratory relief, including an order compelling defendants to provide them with cost of living adjustments dating back to January 1, 2000.

In June 2008, Supreme Court (Edward H. Lehner, J.) granted plaintiffs' motion for summary judgment on the separation of powers claim to the extent of declaring that "defendants, through the practice of linkage, have unconstitutionally abused their power" and directed defendants to, within 90 days, "remedy such abuse" by making a good-faith adjustment to judicial compensation "to reflect the increase in the cost of living since . . . 1998, with an appropriate provision for retroactivity" (*Larabee v Governor of State of N.Y.*, 20 Misc 3d 866, 878 [Sup Ct, NY County 2008], *affd* 65 AD3d 74 [1st Dept 2009], *mod sub nom. Matter of Maron v Silver*, 14 NY3d 230 [2010]).

In its June 2009 affirmance, this Court stated that the defendants had threatened "the integrity, in a structural sense, of the judicial system as an independent institution, in that New York's constitutional architecture prohibits the subordination of the judicial branch to the other branches of government" (*Larabee*, 65 AD3d at 97).

In *Maron*, decided February 23, 2010, the Court of Appeals consolidated three appeals, including *Larabee*, that present and former state justices and judges brought to challenge the legislature's repeated failure to raise judicial salaries. The Court

of Appeals, while rejecting plaintiffs' contention that defendants had violated the State Compensation Clause (NY Const, art VI, § 25 [a]), which prohibits the diminution of judicial compensation, agreed with the *Larabee* plaintiffs that "as a matter of law, the State defendants' failure to consider judicial compensation on the merits violate[d] the Separation of Powers Doctrine" (*Matter of Maron*, 14 NY3d at 261). The Court identified five instances between 2006 and 2008 in which the adjustment of judicial compensation was improperly linked to unrelated objectives, and found that "by . . . holding [judicial compensation increases] hostage to other legislative objectives, the Legislature weakens the Judiciary by making it unduly dependent on the Legislature" (*id.* at 259 [internal quotation marks omitted]). The Court pointed out that the executive and legislative branches have bargaining power that the judiciary lacks, and accordingly "it is imperative that the legitimate needs of the judicial branch receive the appropriate respect and attention. This cannot occur if the Judiciary is used as a pawn . . . in order to achieve ends that are entirely unrelated to the judicial mission" (*id.*).

Addressing the remedy for defendants' violation, the Court of Appeals stated that specific injunctive relief was unnecessary because the Court presumed that the legislature would comply with "the constitutional standards" articulated in *Maron* (*id.* at 261). Accordingly, the Court of Appeals modified this Court's ruling in *Larabee* by simply declaring that defendants had violated the Separation of Powers Doctrine and "allowing for the remedy discussed in this opinion" (*id.* at 264).

In December 2010, the legislature together with then-Governor David Paterson established the Commission on Judicial Compensation (L 2010, ch 567). The statute provided that members of the Commission were to be appointed on April 1, 2011 and the Commission would meet every four years to make recommendations for future salary adjustments which were to take effect unless the legislature specifically rejected them (*id.*). The first potential increase would not take effect until April 1, 2012.* In August 2011, the Commission recommended a 27% increase in judicial salaries, to be phased in over three years beginning on April 1, 2012, some six years after the

---

* The Commission was empowered to "determine whether, for any of the four years commencing on the first of April of such years, following the year in which the commission is established, the annual salaries [for state judges] . . . warrant adjustment" (L 2010, ch 567, § 1 [a] [ii]).

first action in *Maron* was commenced. Those recommendations have been implemented.

In April 2011, plaintiffs in this action moved before Supreme Court Justice Richard F. Braun, who has presided over the case since Justice Lehner's retirement, for leave to renew their motion for summary judgment, arguing that they are entitled to damages for defendants' past constitutional violation because the legislature did not empower the Commission to recommend retroactive increases. Plaintiffs claim that damages should be calculated based upon cost of living adjustments that they should have received after January 1, 2000. In opposition, defendants argue that the Court of Appeals indicated that the adjustment of judicial salaries was the legislature's prerogative and that *Maron* does not provide any basis for renewing any claim for retroactive compensation.

The motion court denied plaintiffs any further relief, finding that plaintiffs had "failed to establish that the legislature did not abide by the declaration of the Court of Appeals as to the legislature's constitutional duties" (*Larabee v Governor of the State of N.Y.*, 37 Misc 3d 748, 754 [Sup Ct, NY County 2012]). The court stated that "[i]nsofar as the Court of Appeals modified rather than affirmed the Appellate Division . . . , it [superseded] Justice Lehner's order to the extent that Justice Lehner had required a retroactive adjustment to judicial compensation" (*id.* at 754).

I disagree. In *Matter of Maron*, the Court of Appeals may not have explicitly addressed the issue of whether damages for defendants' violation of the Separation of Powers Doctrine were available, but it did not hold that relief was precluded. Although the Court of Appeals implicitly rejected the specific relief that Justice Lehner ordered, which directly required defendants compensate members of the judiciary for the increased cost of living since their last pay raise in 1998 (*see Larabee*, 20 Misc 3d at 878), it still found a past constitutional violation for which there should be a remedy. In deference to the legislative and executive branches, the Court of Appeals declined to order specific relief in connection with defendants' violation of the Separation of Powers Doctrine, but instead emphasized that "[w]hen this Court articulates the constitutional standards governing state action, we presume that the State will act accordingly" (14 NY3d at 261).

However, the Court of Appeals declared that it was within the province of the Court to determine "whether the Legislature

has met its constitutional obligations" (*id.* at 263). Accordingly, defendants' creation of a commission that could not consider retroactive increases is subject to judicial scrutiny. In my opinion, the legislature's response to *Maron* failed to satisfy the Court of Appeals' directives. The record before us contains no indication that the legislature ever considered compensation for past constitutional violations on the merits and defendants' conclusory assertion to the contrary cannot substitute for evidence. The legislature was obligated to consider the merits of retroactive compensation free of any linkage, based on the Court's finding that the first violation of the Separation of Powers Doctrine occurred in 2006. That year, the legislature failed to disburse state budget funds allocated to adjust judicial salaries retroactive to April 1, 2005 because of improper linkage (*id.* at 245).

Relief from defendants' past constitutional violations can only be provided by way of monetary damages. Without a monetary award for past violations, the more than 600 judges and justices who retired between 2006 and April 1, 2012, including Hon. Arlene Silverman, plaintiff in *Silverman v Silver* (119 AD3d 449 [1st Dept 2014]) will not obtain any redress whatsoever for the violation of their constitutional rights.

Justice Sweeny's concurrence questions whether monetary damages can be awarded to the judiciary against the legislature. However, it is disingenuous to characterize this lawsuit by judges seeking damages for past injuries as a lawsuit by one branch of government against the other. Rather, it is individual judges who are seeking damages for a constitutional violation for which there is no other remedy.

The remedy sought here is analogous to that awarded in *Beer v United States* (696 F3d 1174 [Fed Cir 2012], *cert denied* 569 US —, 133 S Ct 1997 [2013]). In *Beer*, federal judges successfully sued the United States Congress for the increase in pay that other federal employees had received as cost of living increases (COLAs) but had been blocked by the United States Congress for judges. As in *Larabee*, the Court in *Beer* found a constitutional violation, namely, that failure to allow for pay increases violated the Compensation Clause of the United States Constitution. The United States Circuit Court for the Federal Circuit determined that judges were entitled to an increase equal to the COLAs and also awarded monetary damages to compensate judges for the increases they should have received since 2003 (*Beer*, 696 F3d at 1186-1187). Federal judges have

been awarded their COLAs, and damages for lost pay are forthcoming (*see Beer v United States*, 111 Fed Cl 592 [2013]).

Justice Sweeny distinguishes *Beer* on the ground that it involved violation of a different constitutional provision from the one in this case. However, *Beer* is cited, not for the specific constitutional violation involved, but to demonstrate that damages are an appropriate, if not the only, remedy for a past constitutional violation.

Plaintiffs are entitled to a remedy that compensates them for the violations in an amount equal to the economic injury they sustained (*see Albemarle Paper Co. v Moody*, 422 US 405, 418-419 [1975]). The remedy must be "coextensive with the wrong it is to redress" (*Weissman v Evans*, 56 NY2d 458, 467 [1982]).

New York courts have recognized monetary damages as appropriate relief for constitutional violations for judges who have been subject to those violations (*see Dickinson v Crosson*, 219 AD2d 50, 54 [3d Dept 1996] [Equal Protection Clause rights of Family Court judge plaintiffs in Broome County violated by compensation disparity based upon their geographical location]; *Nicolai v Crosson*, 214 AD2d 714, 715 [2d Dept 1995], *appeal dismissed* 88 NY2d 867 [1996] [same for Family Court and County Court judges in Westchester County]; *Deutsch v Crosson*, 171 AD2d 837 [2d Dept 1991] [same for New York City Family Court judges]). In *Dickinson*, *Nicolai*, and *Deutsch*, the amount of damages was easily calculated by comparing disparities in compensation, but in this case, the amount that would put plaintiffs in the position they would have been in were it not for defendants' improper actions (*see e.g. Weissman v Evans*, 56 NY2d at 467) cannot be calculated based on any single factor. While plaintiffs seek damages calculated based upon the inflation rate, other factors are relevant to making the determination. For example, the amounts that had been budgeted for judicial compensation reform but were never disbursed, the compensation adjustments that other New York State employees received during the relevant period, and adjustments that judges and public employees in other states and the federal government received, are among the multitude of factors that should be considered.

Accordingly, I would remand this action to Supreme Court to determine compensatory damages for the constitutional violations that the Court of Appeals identified from 2006 onward. Contrary to the suggestion in Justice Tom's concurring opinion, I do not believe that plaintiffs are entitled to damages from

January 2000, and emphasize that those damages cannot simply be based on the past increase in the cost of living.

Tom, J.P., concurs in a separate opinion; Sweeny, J., concurs in a separate opinion in which Renwick, J., concurs; Freedman, J., dissents in a separate opinion in which Andrias, J., concurs.

Order, Supreme Court, New York County, entered September 14, 2012, affirmed, without costs.